## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| NIEVES ROCHA, Individually and<br>as the Personal Representative of the<br>Estate of OSCAR ROCHA, Deceased,<br>3416 Beaumont Road<br>Dale City, VA 22913 | :<br>:<br>:<br>:<br>: |
|              Plaintiff, | : |
| v. | :<br>: |
| BROWN & GOULD, LLP,<br>7316 Wisconsin Avenue<br>Suite 200<br>Bethesda, MD 20814 | :<br>:<br>:<br>: |
| DANIEL A. BROWN,<br>7316 Wisconsin Avenue<br>Suite 200<br>Bethesda, MD 20814 | :<br>:<br>:<br>: |
| THE LIPMAN LAW FIRM,<br>5915 Ponce de Leon Blvd.<br>Suite 44<br>Coral Gables, FL 33146 | :<br>:<br>:<br>: |
| DOE DEFENDANTS 1-5, | :<br>: |
|              Defendants. | : |

RECEIVED
Civil Clerk's Office
JUN 0 9 2014
Superior Court of the
District of Columbia
Washington, D.C.

Case No. **14 - 0 0 0 3 5 2 4**

**COMPLAINT AND JURY DEMAND**

Nieves Rocha, individually and in her capacity as the personal representative

of the Estate of Oscar Rocha, through counsel, states as her Complaint against

Defendants Brown and Gould, LLP, Daniel A. Brown, The Lipman Law Firm and

Doe Defendants as follows:



EXHIBIT
A

## NATURE OF THE CASE

1.    This is a legal malpractice action for damages.  Defendants agreed to bring an asbestos product liability personal injury claim for Plaintiff but negligently filed the action in the Superior Court of the District of Columbia after the limitations period had already expired to bring the action in this court. Defendants compounded their negligence by failing to file the action in Maryland whose lengthier limitations provision would have permitted the action to proceed in that forum.  The Superior Court dismissed Plaintiff's action with prejudice on statute of limitations grounds.  The judgment was thereafter affirmed on appeal by the District of Columbia Court of Appeals.

## PARTIES

2.    Plaintiff Nieves Rocha  ("Mrs. Rocha"), a resident of the Commonwealth of Virginia, is the widow of Oscar Rocha and serves as the personal representative of the Estate of Oscar Rocha.

3.    Defendant Brown & Gould, LLP ("B&G") is a law firm based in Bethesda, Maryland and incorporated in that state.  B&G attorneys regularly appear in cases pending in the District of Columbia's local and federal courts.

4.    Defendant Daniel A. Brown ("Brown") is an attorney and a founding member of B&G.  He is a member of the District of Columbia and Maryland bars.

2

5.     Defendant The Lipman Law Firm ("Lipman") is a law firm based in Miami, Florida and incorporated in that state.  None of its attorneys are admitted to practice law in the District of Columbia and the firm is not licensed to do business in the District.

6.     Doe Defendants are individual lawyers and law firms, whose identity is unknown to Plaintiff, that may have participated in the conduct, occurrences and omissions alleged in this Complaint.  Plaintiff reserves the right to name one or more such Doe Defendants as a party-defendant should discovery establish or suggest the need to do so.

## JURISDICTION AND VENUE

7.     This court is vested with jurisdiction of this case pursuant to D.C. Code § 13-423.

8.     Venue is proper in this court pursuant to D.C. Code § 11-921(a).

## FACTS COMMON TO ALL COUNTS

9.     At all times relevant to this litigation, Defendant Brown promoted himself as a specialist in prosecuting asbestos personal injury claims.

10.     Brown claims on his firm's website to have "achiev[ed] what is believed to be the largest individual asbestos settlement in the District of Columbia and has obtained millions of dollars in awards and settlements for his clients."

3

11.     At all times relevant to this action, Lipman has promoted itself as a law firm that specializes in prosecuting asbestos personal injury claims.

12.     Lipman's founder, David M. Lipman, claims on his firm's website that "[s]ince 1986, [he] has practiced exclusively in the area of asbestos personal injury litigation [and] has represented approximately 3,000 clients in asbestos related cases."

13.     On information and belief, in or about 2004, Defendants entered into an agreement to solicit asbestos disease product liability cases in the District of Columbia, Maryland and Virginia.  Lipman agreed to fund a television advertising campaign to locate potential asbestos clients.  Defendants Brown and B&G agreed to develop, file and prosecute the asbestos cases generated by the campaign and split the attorney's fees from the cases with Lipman.

14.     In or about February 2009, Mrs. Rocha saw Defendants' television advertisement while at her Dale City, Virginia home.  She immediately called Brown because her husband, Oscar Rocha, had died on February 10, 2008 from pleural mesothelioma, an asbestos-induced and uniformly fatal cancer.

15.     Oscar Rocha was employed as a carpenter and painter in and around the District of Columbia from approximately 1971 through 1984. Mr. Rocha was exposed to asbestos-containing building materials, including asbestos-containing joint compound used during the construction of walls and ceilings made of drywall.

4

16.    On February 28, 2006, Mr. Rocha was diagnosed with mesothelioma and no longer worked.  On February 10, 2008, Mr. Rocha died in Virginia as a result of complications caused by his disease.

17.    On the morning of February 10, 2009, Mrs. Rocha met with Brown in his Bethesda, Maryland office.  Mrs. Rocha completed a questionnaire concerning her husband's work and medical history and Brown then interviewed her.

18.    During the interview, Mrs. Rocha told Brown that her husband often used Ready Mix Joint Compound, a product manufactured by Georgia-Pacific Corporation.  Brown knew, from past cases, that Ready Mix contained asbestos and that Union Carbide Corporation supplied Georgia-Pacific with the asbestos used in the manufacture of the product.

19.    Brown knew or should have known that Mr. Rocha was exposed to asbestos-containing products in Maryland and that Mrs. Rocha's lawsuit could be filed in Maryland because that state's three-year statute of limitations for asbestos cases had not yet expired.

20.    Brown knew or should have known that Mr. Rocha lived in Maryland in 1972 and 1973 and that during those years, Mr. Rocha worked as a carpenter and painter for at least three suburban Maryland-based contractors (Miller & Long Company, Ralph D. Mitchell Construction Company and R & D Contractors) and that the work, by its very nature, exposed Mr. Rocha to asbestos.

21.     Brown knew or should have known that in 1972 and 1973 asbestos-containing building materials (particularly, Ready Mix and other asbestos-containing joint compound products), were heavily used by painters, carpenters and other building trades in Maryland residential and commercial construction projects.

22.     While in Brown's office, Mrs. Rocha signed a "retainer agreement" that Brown handed to her.  The agreement read, in part:

> I, Nieves R. Rocha, hereby employ the Law Offices of Brown & Gould, LLP and The Lipman Law Firm, jointly and sharing in representation, as legal counsel to represent me, individually and as Executrix/Personal Representative of the Estate of Oscar Rocha, in connection with all claims which I may have for damages which were sustained as a result of injuries due to Oscar Rocha's exposure to asbestos.

A true copy of the retainer agreement is attached hereto as Exhibit 1 and incorporated by reference herein.

23.     In the afternoon of February 10, 2009, Brown drafted Mrs. Rocha's complaint and filed it in the Superior Court of the District of Columbia -- 18 days short of the three-year anniversary of Mr. Rocha's diagnosis of mesothelioma on February 28, 2006.

24.     The complaint named Georgia-Pacific, Union Carbide and seven other companies that manufactured or distributed asbestos–containing products.  The action was entitled *Nieves Rocha v. Georgia-Pacific Corporation, et al.* and

docketed as case number 2009 CA 000838 A.  A true copy of the complaint is

attached hereto as Exhibit 2 and incorporated by reference herein.  The case was

later assigned to the calendar of Judge Natalia Combs Greene.

25.    The complaint alleged, *inter alia*, that Mr. Rocha was exposed to the

defendant-companies' asbestos products at jobsites "in and around the District of

Columbia" and sought a total of $ 60,500,000 in damages.

26.    Brown mistakenly believed that the three-year limitations period

provided for the commencement of tort actions prescribed by D.C. Code § 12-

301(8) applied to Mrs. Rocha's claims and that therefore her action could be filed

and proceed to trial in Superior Court.  The statute provides: "Except as otherwise

specifically provided by law, actions for the following purposes may not be

brought after the expiration of the period specified below from the time the right to

maintain the action accrues: ... (8) for which a limitation is not otherwise specially

prescribed - 3 years."

27.    Brown failed to realize or appreciate that when he filed Mrs. Rocha's

lawsuit in Superior Court it was *already* barred by D.C. Code § 12-311(a) -- a

specific limitations provision for asbestos disease claims such as Plaintiff's enacted

as part of the District of Columbia Statute of Limitations Amendment Act of 1986

-- that provides:

7

(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following: (1) Within one year after the date the plaintiff first suffered disability; or (2) *Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that the disability was caused or contributed to by the exposure.* (emphasis supplied)

28.    The statute defines "disability" as "the loss of time from work as a result of the exposure that precludes the performance of the employee's regular occupation." D.C. Code § 12-311(b).

29.    On information and belief, Brown also hired a Virginia lawyer to file a parallel action for Mrs. Rocha in a Virginia circuit court.  Brown did not prosecute the Virginia action because he knew it was time-barred by the Commonwealth's two-year limitations period for personal injury cases.  Virginia Code § 8.01–243 provides that "every action for personal injuries ... shall be brought within two years after the cause of action accrues."

30.    Brown, a seasoned Maryland lawyer, inexplicably failed to file Mrs. Rocha's action in Maryland and thereby deprived her of that state's three-year statute of limitations that applied to her claims.   Had Brown filed Plaintiff's action in Maryland, it would have proceeded to trial in the normal course of the asbestos litigation pending there.

31.    The general Maryland statute of limitations is Md. Code, Cts. & Jud.

Proc. Art. § 5-101:

> A civil action at law shall be filed within three years from the date it
> accrues unless another provision of the Code provides a different
> period of time within which an action shall be commenced.

32.    Md. Code, Cts. & Jud. Proc. Art. § 5-113 provides a special statute of

limitations for occupational disease claims, such as those asserted by Mrs. Rocha:

> An action for damages arising out of an occupational disease shall be
> filed within 3 years of the discovery of facts from which it was known
> or reasonably should have been known that an occupational disease
> was the proximate cause of death, but in any event, not later than 10
> years from the date of death.

33.    On August 6, 2010, Georgia-Pacific filed a motion for summary

judgment and argued that all of Plaintiff's claims were barred as a matter of law on

the ground that the applicable statute of limitations, D.C. Code § 12-311, had

expired before Plaintiff filed her complaint.

34.    Georgia-Pacific argued that Section 12-311 controlled because Mr.

Rocha developed and died from an asbestos-related illness, mesothelioma, as a

result of continued exposure to asbestos. Georgia-Pacific contended that Section

12-311 governs "any civil action for injury or illness based upon exposure to

asbestos" and provided a plaintiff one year from the "date the plaintiff first

suffered disability" or the date "the plaintiff either knew, or . . . should have known

that the disability was caused or contributed to by asbestos."

9

35.    Further, Georgia-Pacific argued it is undisputed that Mr. Rocha was diagnosed with mesothelioma and became disabled on or before February 28, 2006, and that because Plaintiff's claim was not filed until nearly three years after disability and diagnosis, the claim is barred by the statute's one-year limitations period.

36.    Before filing an opposition to Georgia-Pacific's motion, Brown sought and received numerous extensions of time from Judge Combs Greene in which to file his brief.  On information and belief, Brown did this to buy time to solicit the Council of the District of Columbia (the "Council") to amend Section 12-311.

37.    On October 15, 2010, the Council issued Resolution 18-642 (the "Resolution"). The Resolution provided, in pertinent part:

> D.C. Law 6-202 [codified at § 12-311] was designed to apply to victims of slowly-progressing asbestosis by lengthening the 3-year statute of limitations until, for instance, one year after disability or one year after death.

> (g) However, it has been argued that if one dies or is disabled rapidly, then the statute of limitations [is] only one year. Reading D.C. Law 6-202 in a manner that shortens the standard three-year limitation period to only one year for an injured party with mesothelioma renders a result that stands in direct contrast to the goal of the legislation.

57 D.C. Reg. 9697 (October 5, 2010).

38.     On October 29, 2010, the Council passed, on an emergency basis, the Asbestos Statute of Limitations Clarification Emergency Act of 2010 (the "Act"). Pursuant to the Act, Section 12-311 was amended to include a new subsection which provided that "[a] plaintiff in an asbestos-injury action shall have the longer of the limitation period prescribed by subsection (a) of this section or the limitation period prescribed by § 12-301(8)." 57 D.C. Reg. 10134 (October 20, 2010).

39.     On information and belief, Brown actively participated in drafting the text of the Resolution and the Act.

40.     By 2010, the District of Columbia Court of Appeals had repeatedly held that statutes are to be construed as having only a prospective operation, unless there is a clear legislative showing that they are to be given a retroactive or retrospective effect.

41.     However, Brown failed to include in the text of either the Resolution or the Act, a provision giving the statutes retroactive application to all pending asbestos cases, including Mrs. Rocha's claim that was then facing summary judgment.

42.     On January 10, 2010, Judge Combs Greene granted Georgia-Pacific's summary judgment motion and dismissed Mrs. Rocha's case with prejudice. Judge Combs Greene held that Plaintiff's action was barred by Section 12-311 and that

11

the Act's amendments to Section 12-311 -- which would have saved Mrs. Rocha's case -- could not be given retroactive effect because "neither the Act nor the Resolution contains language to indicate that the legislature intended retroactive application." A true copy of Judge Combs Greene's decision is attached as Exhibit 3 and incorporated by reference herein.

43.     On October 24, 2012, the District of Columbia Court of Appeals affirmed Judge Combs Greene's grant of summary judgment in a *per curium* decision. A true copy of the decision is attached hereto as Exhibit 4 and incorporated by reference herein.

**COUNT I**
(Legal Malpractice)

44.     Plaintiff refers to and incorporates herein the allegations stated in Paragraphs 1 through 43 above and makes them a part hereof as though set forth at length.

45.     Defendants had a duty to use such skill, prudence, and diligence as members of the legal profession commonly possess and exercise, in providing legal services to Plaintiff.

46.     During the course of Defendants' representation of Plaintiff, the conduct of the Defendants complained of above fell below the local and national standards of care for attorneys who represent personal injury victims.

47.    The conduct of the Defendants, and each of them, in doing the acts and omissions herein alleged directly resulted in damages and harm to Plaintiff as set out above.

## COUNT II
### (Breach of Fiduciary Duty)

48.    Plaintiff refers to and incorporates herein the allegations stated in Paragraphs 1 through 47 above and makes them a part hereof as though set forth at length.

49.    Defendants owed Plaintiff Nieves Rocha a fiduciary duty to act at all times in good faith and in her best interests, and had a duty, among other things, to perform the services for which they were retained with reasonable care and skill, to act in Plaintiff's highest and best interests at all times, and not damage her in any way.

50.    Defendants breached their fiduciary duties and obligations to Plaintiff by doing all of the acts and omissions as herein alleged. Among other things, Defendants breached their duty by failing to properly investigate and prosecute Plaintiff's claims, by mishandling and mismanaging her case and by failing to conduct the litigation in a prudent manner.

51.    Plaintiff sustained damages as a direct result of Defendants doing all of the above-described acts and omissions constituting Defendants' breach of their fiduciary duties owed to Plaintiff.

## COUNT III
(Breach of Contract)

52.    Plaintiff refers to and incorporates herein the allegations stated in Paragraphs 1 through 51 above and makes them a part hereof as though set forth at length.

53.    Through the conduct alleged in this Complaint, Defendants materially breached their express and implied contractual obligations to Mrs. Rocha that they would take all action legally necessary and appropriate to protect her interests and advance her claims; that they would perform all legal services with due care and diligence; and that they would provide her with professionally competent, skilled and careful lawyers to handle her lawsuit.

54.    As a direct result of Defendants' material breach of contract, Plaintiff has suffered injury and damages.

WHEREFORE Plaintiff demands judgment against Defendants, jointly and severally, in the principal amount of $10,000,000, interest, costs and such further relief as the court deems just.

Peter T. Enslein (367467)
Law Offices of Peter T. Enslein, P.C.
1738 Wisconsin Avenue, N.W.
Washington, DC 20007
(202) 329-9949
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by jury on all issues.

Peter T. Enslein

**EXHIBIT 1**

## RETAINER AGREEMENT

I, Nieves R. Rocha, hereby employ the Law Offices of Brown & Gould, LLP and The Lipman Law Firm, jointly and sharing in representation, as legal counsel to represent me, individually and as Executrix/Personal Representative of the Estate of Oscar Rocha, in connection with all claims which I may have for damages which were sustained as a result of injuries due to Oscar Rocha's exposure to asbestos. I understand that by this Agreement you do not agree to appeal this case should it be necessary. Such representation, if necessary, may be agreed upon at a later date.

I acknowledge that the Law Offices of Brown & Gould, LLP and The Lipman Law Firm do not represent me in claims for workers' compensation or Veterans Administration benefits, or benefits from any other source other than a lawsuit or claim against asbestos manufacturers and/or suppliers.

I agree to pay for your services a total professional fee of thirty three and one-third percent (33⅓%) of any gross amount you recover for me on my behalf by suit, settlement or otherwise. If additional counsel become involved in this case there will be no extra attorneys fees charged. Any fee received by counsel other than the Law Offices of Brown & Gould, LLP and The Lipman Law Firm will be paid out of the contingent fees described above. *I understand that if no recovery is had, I will not owe you any attorney's fees whatsoever.*

I understand that I remain responsible for court costs and other expenses incurred by you in the investigation and prosecution of my claim. These costs and expenses include but are not limited to obtaining reports and records, retaining expert witness(es), producing trial exhibits, filing pleadings, serving subpoenas, taking depositions and securing court reporter, making long distance telephone calls, photocopies, fax charges, and other related costs. Attorney's fees will be calculated based on any gross amount recovered prior to the deduction of any expenses from the recovery. *I understand that you will advance costs of the case on my behalf and that if you do not recover any compensation for me, I will not be responsible for said costs unless I discharge you as counsel.*

I authorize you to fully investigate my claim, and should you file suit or other legal proceedings on my behalf, to fully prepare for and prosecute the same. *If after reasonable investigation of such claim(s) you determine that it is not feasible to prosecute such claim, upon notification to me of such fact you may withdraw from representation under this Agreement.* I understand that you have the right to withdraw from representing me if I misrepresent or fail to disclose material facts to you, fail to cooperate, or if anything else occurs that would impair the attorney-client relationship or would render your continuing representation unlawful or unethical.

All settlement offers will be communicated to the client. The Law Offices of Brown & Gould, LLP and The Lipman Law Firm agree that no settlement will be made without the client's consent and I, the client, agree not to settle any claims arising out of this incident without having first consulted with you.

I agree that Law Offices of Brown & Gould, LLP and The Lipman Law Firm have made no promises or guarantees regarding the outcome of this claim.

[SIGNATURE PAGE TO RETAINER AGREEMENT]

*I, the undersigned client, have read the above provisions and agree that they constitute the entire agreement between the parties.*

2-10-09
DATE

**EXHIBIT 2**

2/10/09

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### Civil Division

NIEVES ROCHA, Individually and on behalf of :
the Estate of OSCAR ROCHA, Deceased, :
3416 Beaumont Road :
Dale City, VA 22193 :
 :
    Plaintiff, :
 :
v. :
 :
 : Civil Action No. _____ 0000838-09
 :
GEORGIA-PACIFIC CORPORATION :
133 Peachtree Street, N.E. :
Atlanta, Georgia 30303 :
Serve: President :
  133 Peachtree Street, NE :
  Atlanta, Georgia 30303 :
 :
AC & R INSULATION CO., INC. :
Serve: Geoffrey S. Gavett, Esq. :
  Gavett & Datt :
  15850 Crabbs Branch Way, #180 :
  Rockville, MD 20855 :
 :
BONDEX INTERNATIONAL, INC. :
Serve: Prentice Hall Corp. Systems, Inc. :
  221 Bolivar Street :
  Jefferson City, MO 65101 :
 :
KAISER GYPSUM COMPANY, INC. :
Serve: CT Corporation Systems :
  818 West Seventh Street :
  Los Angeles, CA  90017 :
 :
KRAFFT-MURPHY COMPANY :
(and as successor to National Asbestos Co.) :
Serve: Neil MacDonald, Esq. :
  Hartel Kane Desantis & Howie, LLP :
  11720 Beltsville Dr., Ste. 500 :
  Beltsville, MD 20705 :
 :



RECEIVED
Civil Clerk's Office
FEB 1 0 2009
Superior Court of the
District of Columbia
Washington, D.C.

METROPOLITAN LIFE INSURANCE, CO.          :
Serve: President/CEO                                     :
      1 Madison Ave.                                  :
      New York, NY 10010                        :
                                                             :
NOLAND CO.                                                 :
Serve: Arthur P. Henderson, Jr.                     :
      2700 Warwick Boulevard                  :
      Newport News, VA 23607               :
                                                             :
THOS. SOMERVILLE CO.                            :
Serve: President                                            :
      Thos. Somerville Co.                          :
      4900 6th Street, N.E.                          :
      Washington, D.C. 20017                   :
                                                             :
UNION CARBIDE                                        :
Serve: President                                            :
      400 West Sam Houston Pkwy South   :
      Houston, TX 77042                            :
                                                             :
THE WALTER E. CAMPBELL COMPANY, INC. :
Serve: Michael C. Gibbons                          :
      361 Berkshire Drive                            :
      Riva, MD 21140                                 :
                                                             :
            Defendants.                   :
                                                             :

---

## "WRONGFUL DEATH and SURVIVAL COMPLAINT"

(Negligence, Strict Liability, Breach of Warranty, Wrongful Death,
Survival Action, Punitive Damages, Loss of Consortium)

    1.    Jurisdiction of this Court is based on D.C. Ann. 11-921 (1981).

Jurisdiction over the defendants rests on D.C. Code Ann. 13-423 (1981) based on their business

activities in the District of Columbia and their acts or omissions causing injury to the male

plaintiff within the District of Columbia.

    2.    Oscar Rocha, hereinafter referred to as "the decedent" or "plaintiff-decedent", was

2

employed in the construction trades as a carpenter and painter from approximately 1971 through approximately 1984 in and around the District of Columbia at jobsites where he was exposed to asbestos products.  During this period of time, the decedent frequently used and/or came into contact with asbestos and asbestos products designed, manufactured, specified, inspected, distributed, supplied and/or installed by the above-named defendants (hereinafter, individually and collectively "the defendants' asbestos products").  Because of this frequent contact with the defendants' asbestos products, the decedent inhaled and ingested great quantities of asbestos fibers resulting in the development of mesothelioma and other related pulmonary problems. Decedent's mesothelioma resulted in his death.

3.     Nieves Rocha (hereinafter "Plaintiff") is decedent's widow.

## COUNT I
### (Negligence)

4.     Plaintiff hereby adopts by reference the preceding paragraphs of the Complaint as if fully set forth herein and further alleges that the decedent's mesothelioma and subsequent death was a direct and proximate result of the negligence of the defendants named herein in their design, manufacture, inspection, production, testing, distribution, specification, supply and/or installation and labeling of asbestos-containing materials and products, including, but not limited to, negligence in:

a.     failing to adequately warn the decedent of the hazards associated with the inhalation of asbestos fibers;

b.     failing to adequately warn the decedent that protective equipment should be used at all times when working with products containing asbestos;

3

    c.      failing to properly design and manufacture asbestos products for safe use under the conditions of use that were reasonably anticipated;

    d.      failing to properly test the asbestos products for hazards prior to placing these goods in the stream of commerce;

    e.      failing to provide adequate instructions for safe and proper use of asbestos products;

    f.      failing to remove asbestos products from the stream of commerce even after the defendants knew, or in the exercise of reasonable care, should have known, that these products were unsafe for use by consumers or workers under reasonable anticipated circumstances and/or any circumstances;

    g.      failing to specify the use of non-asbestos containing substitute products; and

    h.      failing to adequately warn the decedent of the hazards associated with the repair and maintenance of their products which work, by its nature, involved the disturbing, removal and/or manipulation of asbestos.

5.      As a direct and proximate result of the negligence of the defendants named herein, the decedent developed mesothelioma which resulted in his death.  Such asbestos-induced injuries caused the decedent's permanent total disability, and decedent was caused to suffer extreme physical pain and discomfort, as well as great mental anguish before his death. Moreover, as a result of the debilitating injuries, the decedent was caused to incur substantial expenses for medical care and treatment.

WHEREFORE, Plaintiff demands judgment against the defendants in the full and just amount of TEN MILLION DOLLARS ($10,000,000.00), plus interest and costs.

## COUNT II
### (Strict Liability)

6.    Plaintiff adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein, and further alleges that the illness, injury, and damages which the Plaintiff-decedent suffered were a direct and proximate result of the design, manufacture, specification, inspection, sale, supply and/or distribution of asbestos-containing products, by the defendants named herein, which were defective and/or unreasonably dangerous to the user and/or consumer. The asbestos-containing products were defective and/or unreasonably dangerous in that they contained deleterious, toxic and carcinogenic asbestos fibers and because the products lacked any or adequate warnings about the hazards they posed. The asbestos-containing products were further designed as defective and/or unreasonably dangerous in that their intended use and maintenance contemplated that the asbestos materials would be disturbed, releasing inhalable asbestos fibers, and the product manuals or specification data specified replacement, from time to time, of worn out or damaged asbestos materials. The defendants named above are now or have been engaged in the business of designing, manufacturing, selling, inspecting, specifying in use and/or distributing asbestos-containing products. The asbestos products that caused injury to the decedent reached him without substantial change in the condition in which they were sold. The decedent was unaware of the dangerous propensities of the asbestos products which rendered them unsafe and unfit for their intended use, and at the time he used these products, such use was anticipated by or should reasonably have been anticipated by the defendants.

7.     As a direct and proximate result of the strict liability of the defendants herein, the decedent developed mesothelioma which resulted in his death.   Such injuries caused the decedent's permanent total disability, and the decedent was caused to suffer extreme physical pain and discomfort, as well as great mental anguish before his death.  Moreover, as a result of the debilitating injuries, the decedent was caused to incur substantial expenses for medical care and treatment.

WHEREFORE, Plaintiff demands judgment against the defendant in the full and just amount of TEN MILLION DOLLARS ($10,000,000.00), plus interest and costs.

## COUNT III
(Breach of Warranty)

8.     Plaintiff adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein, and further alleges that the illness, injury and damages from which the Plaintiff-decedent suffered were a direct and proximate result of the breach of express warranties made by the defendants herein, in that the asbestos products used by the decedent were expressly warranted as safe, and the decedent relied upon these express warranties of the defendants.  However, the asbestos products as designed, manufactured, specified, inspected and distributed by the defendants herein were not safe for use by the decedent, but rather caused the disabling and fatal injuries from which the decedent suffered.

9.     The illness, injury, and damages from which the decedent suffered were a direct and proximate result of the breach of the implied warranty of fitness made by the defendants herein, in that the asbestos products used by the decedent were impliedly warranted by the

defendants to be fit for their intended purposes and uses, and the decedent relied upon the defendants' skill and judgment and the implied warranties made by the defendants. However, the asbestos products as designed, manufactured, specified, inspected and distributed by the defendants herein were not fit for use of their intended purposes, but rather caused the disabling and fatal injuries from which the decedent suffered.

10.  The illness, injury, and damages from which the decedent suffered were a direct and proximate result of the breach of the implied warranty of merchantability made by the defendants named herein, in that the asbestos products used by the decedent were impliedly warranted by the defendants to be of merchantable quality, fit, safe, and in proper condition for the ordinary use for which asbestos products are designed and used, and the plaintiff relied upon the defendants' skill and judgment and the implied warranty of merchantability made by the defendants. However, the asbestos products as designed, manufactured, specified, inspected and distributed by the defendants named herein were unfit, unsafe, and unusable for the purposes for which they were intended, but rather caused the disabling and fatal injuries from which the decedent suffered.

11.  As a direct and proximate result of the breaches of warranty of the defendants named herein, the decedent developed mesothelioma which resulted in his death. Such injuries caused the decedent's permanent total disability, and decedent was caused to suffer extreme physical pain and discomfort, as well as great mental anguish before his death. Moreover, as a result of the debilitating injuries, the decedent was caused to incur substantial expenses for medical care and treatment.

WHEREFORE, Plaintiff demands judgment against the defendants in the full and just amount of TEN MILLION DOLLARS ($10,000,000.00), plus interest and costs.

### COUNT IV
(Wrongful Death of Oscar Rocha)

12.     This claim arises under D.C. Code Ann. 16-2701 (1981) *et seq.* and is brought by Plaintiff, on behalf of the estate of plaintiff-decedent, Oscar Rocha.

13.     Plaintiff adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

14.     The plaintiff-decedent is survived by his spouse and children who, as a direct and proximate result of the defendants' negligent acts and/or omissions, strict liability and breaches of warranty as herein described, have been deprived of the love, affection, society, companionship and guidance of the plaintiff-decedent and have incurred substantial medical and funeral expenses as well as suffered substantial pecuniary losses.

WHEREFORE, Plaintiff, on behalf of the estate of the plaintiff-decedent, Oscar Rocha, demands judgment against the defendants in the full and just amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus interest and costs.

### COUNT V
(Survival Action)

15.     This claim arises under D.C. Code Ann. 12-101 (1981) and is brought by Plaintiff, Nieves Rocha, on behalf of the estate of the plaintiff-decedent, Oscar Rocha.

16.     Plaintiff adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

17.     The negligent acts and/or omissions, strict liability, breaches of warranty, as herein described, of the defendants which directly and proximately resulted in the death of the plaintiff-decedent, directly and proximately caused the plaintiff-decedent to be deprived of life and the enjoyment, enlightenment and enrichment thereof, and further caused the plaintiff-decedent to suffer great physical pain and mental suffering; and further caused the estate of the plaintiff-decedent to incur significant medical expenses.

WHEREFORE, Plaintiff, on behalf of the estate of Oscar Rocha, demands judgment against the defendants in the full and just amount of TEN MILLION DOLLARS ($10,000,000.00), plus interest and costs.

## COUNT VI
(Punitive Damages)

18.     Plaintiff-decedent adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein, and further alleges that the illness, injury, and damages which he suffered were a direct and proximate result of the conduct of the defendants named herein, either by clear and convincing acts of commission or omission, which were intentional and/or so reckless, willful, and wanton in nature as to rise to the level of intentional action by the defendants, exhibiting reckless indifference to the health and well-being of the plaintiff-decedent and other similarly-situated workers, and in reckless disregard for the consequences the defendants knew or should have known would result from their actions.

19.     The illness, injury, and damages suffered by the plaintiff-decedent were a direct result of the conduct on the part of the defendants that amounted to fraudulent representation

9

concerning the safety of working in an environment containing asbestos fibers, such representation having been made despite defendants' knowledge that these products and this work environment were wholly unsafe, dangerous, and hazardous to the health of the plaintiff-decedent and/or similarly-situated workers.

WHEREFORE, Plaintiff demands judgment for punitive damages against the defendants in the full and just amount of TEN MILLION DOLLARS ($10,000,000.00), plus interest and costs.

**COUNT VII**
**(Loss of Consortium)**

20.    Plaintiff adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein, and further asserts that she is the widow of the plaintiff-decedent.

21.    As a direct and proximate result of the negligence, strict liability, breaches of warranty of the defendants herein, Plaintiff has incurred substantial expenses for the medical care and treatment of her husband, and has suffered and will continue to suffer the loss of consortium, society, and companionship of her husband.

WHEREFORE, Plaintiff demands judgment against the defendants in the full and just amount of TEN MILLION DOLLARS ($10,000,000.00), plus interest and costs.

Respectfully submitted,

Daniel A. Brown (444772)
BROWN & GOULD, LLP
7700 Old Georgetown Road
Suite 500
Bethesda, MD 20814
(301) 718-4548
Attorney for Plaintiff

10

JURY TRIAL REQUESTED:

Daniel A. Brown

**EXHIBIT 3**

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| NIEVES ROCHA, Individually and as Personal Representative of the Estate of OSCAR ROCHA, Deceased, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Case No. 2009 CA 000838 A Judge Natalia M. Combs Greene Calendar 4 |
| GEORGIA-PACIFIC CORPORATION, *et al.*, | * | |
| Defendants. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## OMINBUS ORDER

This matter is before the Court on Defendant Georgia-Pacific LLC's ("Georgia-Pacific") Motion for Partial Summary Judgment (the "Motion"), Plaintiff's Opposition, Georgia-Pacific's Reply and Supplemental Reply, Plaintiff's Surreply and Georgia-Pacific's Response thereto. Also before the Court is Defendant Union Carbide Corporation's ("Union Carbide") Motion for Summary Judgment as to All Claims brought on grounds other than statute of limitations.[1] Upon consideration of the pleadings, the parties' arguments and the record herein, the Motion is granted.[2]

**Background**

Oscar Rocha (the decedent) was employed as a carpenter and painter in and around the District of Columbia from approximately 1971 through approximately 1984. During that time,

---

[1] On August 9, 2010, Union Carbide filed a Notice of Adoption of Other Defendants' Motions for Summary Judgment and/or Motions *in Limine*, purporting to adopt Georgia-Pacific's Motion for Partial Summary Judgment on statute of limitations grounds.

[2] On December 21, 2010, at a hearing (actually scheduled as a pre-trial settlement conference) in open court, the Court issued a ruling on the Motion. At that time, the Court indicated it would issue a written order and opinion providing in more detail the reasons for its ruling. Accordingly, the ruling issued on December 21, 2010 is adopted and incorporated herewith.

Mr. Rocha used and came in contact with asbestos and asbestos products "designed, manufactured, specified, inspected, distributed, supplied and/or installed" by the defendants named in this case. (Compl. ¶ 2.)  In particular, it was alleged that Mr. Rocha used Georgia-Pacific Ready-Mix joint compound on job sites in the District of Columbia Metropolitan area.

On or before February 28, 2006, Mr. Rocha was diagnosed with mesothelioma, an asbestos-related illness, and no longer able to work.  (Opposition at 2; Mot. Memo. at Ex. 2 (Surgical Pathology Report, dated Feb. 28, 2006).)  On February 10, 2008, Mr. Rocha died as a result of complications caused by his disease.  On February 10, 2009, Plaintiff Nieves Rocha (the "Plaintiff"), Mr. Rocha's widow, filed this action individually and on behalf of the Estate.

Count I of the Complaint alleges that Mr. Rocha's injuries were caused by the Defendants' negligence.  Specifically, Plaintiff alleges that Defendants failed to: (1) warn Mr. Rocha of the hazards of asbestos inhalation; (2) warn Mr. Rocha that he should use protective equipment while working with asbestos; (3) properly design and manufacture safe products; (4) properly test their products; (5) provide adequate instructions for use of the product; (6) remove asbestos from stream of commerce after Defendants should have known that asbestos was not safe; (7) refer Mr. Rocha to non-asbestos products; and (8) adequately warn Mr. Rocha about the dangers involved in maintaining and/or removing asbestos.

Count II alleges that Defendants are strictly liable on the ground that the products were defective and/or unreasonably dangerous and that Mr. Rocha's injuries were caused by this defect or danger.  Count III alleges that Mr. Rocha's injury was caused by Defendants' breach of both express and implied warranties of fitness and merchantability.  Count IV alleges wrongful death under D.C. Code § 16-2701 (1981).  Count V is a survival action pursuant to D.C. Code § 12-101 (1981).  Count VI claims that punitive damages are appropriate because Defendants'

intentional, reckless, or willful and wanton conduct proximately caused Mr. Rocha's injuries. Count VII alleges loss of consortium as a result of Defendants' wrongful conduct.[3]

**The Instant Motion**

Georgia-Pacific argues that Plaintiff's claims of Negligence, Strict liability, Breach of Warranty,[4] Survival Actions and Punitive Damages are barred as a matter of law on the ground that the applicable statute of limitations, D.C. Code § 12-311, had expired by the time Plaintiff filed her Complaint. Georgia-Pacific claims that § 12-311 controls this case because Mr. Rocha developed and died from an asbestos-related illness, mesothelioma, as a result of continued exposure to asbestos. Section 12-311 governs "any civil action for injury or illness based upon exposure to asbestos" and provides a plaintiff one year from the "date the plaintiff first suffered disability" (the "disability date")[5] or the date "the plaintiff either knew, or . . . should have known that the disability was caused or contributed to by asbestos" (the "discovery date"). Further, Georgia-Pacific argues it is undisputed that Mr. Rocha was diagnosed with, and became disabled, on or before February 28, 2006, and that because Plaintiff's claim was not filed until nearly three years after disability and diagnosis, the claim is barred by the relevant statute of limitations period. (Surgical Pathology Report, dated Feb. 28, 2006.)

On October 6, 2010, Plaintiff filed her Opposition to the Motion, contending that the one-year statute of limitations period under § 12-311 does not apply in this case; rather, the

---

[3] Count VII was dismissed on December 1, 2010 based on the Court's grant of Defendant's Motion for Summary Judgment as to this Count.

[4] Georgia-Pacific asserts that Plaintiff's breach of warranty claim is barred as a matter of law by D.C. Code § 28:2-725 of the Commercial Instruments and Transactions Title, which sets forth the statute of limitations for actions for breach of any contract for the sale of goods, including breach of warranty. (*See* Mot. Memo at 4.) Pursuant to § 28:2-725, a breach of warranty claim must be filed within four years of the date of delivery of the relevant goods. Because Plaintiff purchased the Georgia-Pacific Ready Mix joint compound during the late 1970s and early 1980s but did not file a cause of action until 2009, Georgica-Pacific argues that this claim falls far outside the prescribed limitations period. Plaintiff does not dispute this claim. Upon review of the record and pleadings, the Court finds that Plaintiff's breach of warranty claim is barred as a matter of law by § 28:2-725.

[5] Pursuant to § 12-311(b), "disability" refers to "loss of time from work as a result of the exposure that precludes the performance of the employee's regular occupation." *Id.*

appropriate statutory period is the three-year period provided for tort actions prescribed by D.C. Code § 12-301(8). Plaintiff argues that although § 12-311 was generally designed to provide all victims of asbestos-related illnesses a broader time period within which to sue, the statute was enacted primarily to address asbestosis, a gradually progressing illness. In support of this argument, Plaintiff notes that under § 12-301(8), asbestosis patients were previously required to bring a cause of action within three years of diagnosis, regardless of how far their disease had progressed or ability to continue to work. Under § 12-311, however, asbestosis patients are provided more time in which to sue because the clock does not begin to run until the later of the date of disability or discovery. As a result, asbestosis plaintiffs often have far longer than three years in which to bring suit. Plaintiff asserts that the legislature did not intend for § 12-311 to encompass plaintiffs with mesothelioma, which carries a presumption that it is caused by asbestos exposure and immediately prevents the patient from working, and typically kills within two years of diagnosis. Plaintiff argues that to apply § 12-311 to plaintiffs with mesothelioma produces the "absurd result" that a mesothelioma victim would only have one year in which to file a negligence claim, while providing all other asbestos-related plaintiffs with at least three years to bring suit.

On October 27, 2010, Georgia-Pacific filed its Reply, in which it argues that Plaintiff's reliance on § 12-301(8) is misplaced as § 12-311 is the only applicable statute and must be construed accordingly to its plain meaning. Georgia-Pacific further argues that § 12-311 is unambiguous on its face as it applies to *all* "injur[ies] or illness[es] based upon exposure to asbestos," and therefore resort to legislative history is unnecessary. Finally, Georgia-Pacific contends that Count IV of Plaintiff's wrongful death claim should be dismissed in the event the

Court decides to grant the Motion; because Mr. Rocha would not have had a viable claim for his own injuries at the time of his death.

On October 15, 2010, the Council of the District of Columbia (the "Council") issued Resolution 18-642 (the "Resolution"). The Resolution provides, in pertinent part:

> D.C. Law 6-202 [codified at § 12-311] was designed to apply to victims of slowly-progressing asbestosis by lengthening the 3-year statute of limitations until, for instance, one year after disability or one year after death.

> (g) However, it has been argued that if one dies or is disabled rapidly, then the statute of limitations [is] only one year. Reading D.C. Law 6-202 in a manner that shortens the standard three-year limitation period to only one year for an injured party with mesothelioma renders a result that stands in direct contrast to the goal of the legislation.

57 D.C. Reg. 9697 (October 5, 2010).   On October 29, 2010, the Council passed, on an emergency basis, the Asbestos Statute of Limitations Clarification Emergency Act of 2010 (the "Act").  Pursuant to the Act, § 12-311 was amended to include a new subsection which provides that "[a] plaintiff in an asbestos-injury action shall have the longer of the limitation period prescribed by subsection (a) of this section or the limitation period prescribed by § 12-301(8)." 57 D.C. Reg. 10134 (October 20, 2010).  The Act is to remain in effect for no longer than ninety days. *Id.*

Plaintiff argues that the Resolution and Act bolster their argument that the intent of the legislation was to provide a more liberal time period in which injured parties might file an action and deal with the gradually progressive nature of asbestosis, and therefore that the October 2010 legislation should be applied retroactively.[6]  Georgia-Pacific contends that an examination of the original legislative history and subsequent legislative actions is unnecessary when the plain

---

[6] Georgia-Pacific filed the Motion August 6, 2010. The parties' last pleading in regard to the Motion was filed on November 19, 2010.  Plaintiff did not file its Opposition until October 6, 2010.  The Court made its oral ruling on December 21, 2010.

meaning of § 12-311 is clear and unambiguous, and that the Act should not be applied retroactively because no such intent was indicated by the legislature.[7]

**Discussion**

### A.  Summary Judgment

Rule 56 indicates that a court should grant a motion for summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c).  In other words, "[s]ummary judgment is a 'remedy which is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law.'" *Knight v. Furlow*, 553 A.2d 1232, 1233 (D.C. 1989) (internal citations omitted).

When a party moves for summary judgment, "[t]he moving party carries the burden of proving that no genuine issue of fact is in dispute." *Grant v. May Dept. Stores*, 786 A.2d 580, 583 (D.C. 2001).  The moving party may shift this burden if they can successfully show that if the case proceeded to trial, the nonmoving party would not be able to bring forth any competent evidence against them. *Nader v. de Toledano*, 408 A.2d 31 (D.C. 1979).  In considering the motion, "[t]he pleadings, depositions, and affidavits admitted in support of the motion must be viewed in the light most favorable to the non-moving party." *Id.* (citations omitted).

After the moving party makes a showing that there is no genuine issue of material fact, "the non-moving party then has the burden to show that an issue does exist." *Grant*, 786 A.2d at 583 (citing *Nader*, 408 A.2d at 41) (citations omitted).  Once the burden has shifted, "[m]ere

---

[7] Specifically, Georgia-Pacific argues: "The one-year limitations period of Section 12-311 has governed asbestos litigation in the District of Columbia for more than twenty years.  The fact that no legislature saw fit to amend the statute over the past two decades indicates that, in enacting Section 12-311, the legislature meant exactly what it said.  The current legislature may wish to amend Section 12-311 and it has the power to do so.  It cannot, however, tell this Court how to interpret the statute as it existed at the time this case was filed.  Moreover, the suggestion in the resolution that it merely constitutes a clarification of the statute to conform to the original intent is belied by the fact that the Act fundamentally alters the statutory language." (Supp. Reply at 6.)

conclusory allegations on the part of the non-moving party are insufficient to stave off the entry of summary judgment." *Musa v. Continental Insurance Co.*, 644 A.2d 999, 1002 (D.C. 1994) (citing *Graff v. Malawar*, 592 A.2d 1038, 1040 (D.C. 1991)). The Court of Appeals has interpreted this to mean that the nonmoving party must bring forth specific facts by means of affidavit or other documents in a similar sworn fashion that indicate that there is in fact a genuine issue for trial. *See Potts v. District of Columbia*, 697 A.2d 1249 (D.C. 1997). Put another way, a motion for summary judgment compels the complainant to show that there is "sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial." *International Underwriters, Inc. v. Boyle*, 365 A.2d 779, 782 (D.C. 1976).

To survive summary judgment in an asbestos case, the plaintiff must establish, at minimum that the plaintiff and the product were at the same place at the same time. *Claytor v. Owens-Corning Fiberglas*, 662 A.2d 1374, 1384-85 (D.C. 1995). This requirement is met when there is testimony that the plaintiff frequently worked on or around the asbestos product; the plaintiff need not specify an exact place and time when the exposure occurred. *Weakley v. Burnham*, 871 A.2d 1167, 1175 (D.C. 2005) ("We do not read the 'same time and same place' minimum standard as requiring the plaintiff to recall and specify a *particular* time and a *particular* place." [emphasis retained]). Simply demonstrating, however, that a plaintiff worked at locations where asbestos was present or asbestos-containing products were used at some point does not justify an inference, sufficient to defeat summary judgment, that plaintiff was personally exposed to asbestos. *Claytor*, 662 A.2d at 1384.

In sum, the Court should grant this Motion for Summary Judgment "if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror,

acting reasonably, could not find for the nonmoving party, (3) under the appropriate burden of proof." *Nader*, 408 A.2d at 42.

### B. Legislative Intent

To interpret the intent of a statute, District of Columbia law provides that the Court must first look to the plain meaning of a statute and construe words according to their ordinary meaning. *See Steward v. Moskowitz*, 5 A.3d 638, 647-48 (D.C. 2010). If the words are clear and unambiguous, a court "must give effect to its plain meaning." *Riggs Nat. Bank of Washington D.C. v. Dist. of Columbia*, 581 A.2d 1229, 1235 (D.C. 1990). The Court's interpretation should not, however, be "at variance with the policy of the legislation as a whole," but rather a Court must consider and look to the purpose of the legislation in conjunction with the wording. *See Steward*, 5 A.3d at 648 (quoting *Dist. of Columbia v. Fitzgerald*, 953 A.2d 288, 300 (D.C. 2007)). The Court of Appeals, therefore, has recognized at least four situations where it may be appropriate to look beyond the plain meaning of statutory language to understand the legislative intent:

> First, even when the words of a statute have "superficial clarity," a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve. Second, "the literal meaning of a statute will not be followed when it produces absurd results." Third, whenever possible, the words of a statute are to be construed to avoid "obvious injustice." Finally, a court may refuse to adhere strictly to the plain wording of a statute in order "to effectuate the legislative purpose," as determined by a reading of the legislative history or by an examination of the statute as a whole.

*Carter v. State Farm Mut. Auto. Ins. Co.*, 808 A.2d 466, 471 (D.C. 2002) (quoting *Peoples Drug Stores, Inc. v. Dist. of Columbia*, 470 A.2d 751, 754 (D.C. 1983)).

The Court finds § 12-311 is clear and unambiguous—it provides the applicable statute of limitations for *all* "civil actions for injur[ies] or illness[es] based upon exposure to asbestos." Contrary to Plaintiff's contention, § 12-311 contains no distinctions for actions based upon various (or different) asbestos-related illnesses. Nor does it offer a purported plaintiff the option of using the three-year statute of limitations period for general tort actions under § 12-301(8). Section 12-311 states plainly that a plaintiff has one year from the disability or discovery date, whichever is later, in which to sue for damages caused by exposure to asbestos. Consequently, § 12-311 merely tolls the statute of limitations period until both of its required prongs, discovery and disability, have been met. In most instances, this statutory scheme means that a plaintiff will have a longer window in which to sue than if the strict three-year rule of § 12-301(8) were applied. It does not, however, foreclose the possibility that if the disability and discovery dates occur simultaneously or close in time (as in this case), a potential plaintiff might have less time in which to sue than under § 12-301(8).

Notwithstanding the statute's unequivocal language, the Court finds that none of the extraordinary scenarios enumerated in *Peoples Drug* are applicable in this case such as might warrant the Court to look beyond the statute's plain meaning to determine its legislative intent. After examination of the legislative history and statute as a whole, the Court is not persuaded that there is any reason or basis to depart from the statute's plain meaning "to effectuate the legislative purpose."

The only documents that evince the intent of the 1986 Council are (1) the "Legal Analysis of the District of Columbia Statute of Limitations Amendment Act of 1986" (the "Legal Analysis"), transmitted to the Council along with the Referral of Proposed Legislation; and (2) "Comments of James R. Murphy, Acting Corporation Counsel, D.C. Before the Committee on

the Judiciary Bill 6-510, the District of Columbia Statute of Limitations Amendment Act of 1986" ("Comments of James R. Murphy"). This (relatively) scant legislative record reveals that § 12-311 was designed "to provide a new, special statute of limitations . . . relating to actions for personal injury, illness, or death caused by exposure to asbestos." (Legal Analysis at 3.) "This special approach to personal injury claims related to asbestos is justified by the gradually progressive nature of asbestos-caused diseases, and by the fact that even after the appearance of symptoms, actual disability may not occur until years later." *Id.* Ultimately, § 12-311 "will protect victims *by preserving their right of action until the full impact of their disease is known*." (Comments of James R. Murphy at 3 (emphasis added).)

Since 1986, this same legislative history has been examined in order to interpret the Council's purpose in enacting § 12-311. In *Gwyer v. Celotex Corp.*, 117 Daily Wash. L. Rptr. 2617 (D.C. Super. Ct. 1989), the trial court determined that "the legislative history demonstrates beyond any doubt that the intent behind the statute's enactment was to expand the period of time in which plaintiffs could sue to recover for asbestos-related injury or illness." *Id.* at 2620. In *Owens-Corning Fiberglas Corp. v. Henkel*, 689 A.2d 1224 (D.C. 1997), the Court of Appeals held that "the general purpose underlying Section 12-311 was to expand the period of time in which plaintiffs could sue to recover for asbestos injuries, not to contract it." *Id.* at 1232.

Section 12-311 was designed to provide a specific statute of limitations period for all injuries and illnesses caused by exposure to asbestos or asbestos-containing products. The need for a distinct statutory period, however, was prompted by the determination that many asbestos-related diseases progress gradually and discovery of the disease and actual disability dates often occur many years apart. As a result, the legislature enacted a statutory scheme, which preserves a potential plaintiff's claim "until the full impact of their disease is known." (Comments of

James R. Murphy at 3.)  In this way, the legislature created a statute of limitations period for asbestos-related actions that is *generally* more liberal so that in most cases, a plaintiff has or may have much longer than three years (as under §12-301(8)) in which to sue.  There is no indication, however, that the legislature intended to create a statutory scheme that guaranteed *each and every* potential asbestos-related plaintiff more than three years to sue.  In rare cases (such as the instant action), when the disability and discovery date occur so near in time, a plaintiff may indeed have less time in which to sue than would have been available under §12-301(8).[8]  This rare scenario, albeit unfortunate, does not contradict the apparent legislative intent of § 12-311 of creating a specific statute of limitations period for asbestos-related diseases that when viewed *generally* provides potential plaintiffs with a more liberal time in which to sue.  This statutory scheme was also designed to allow individuals who may have been diagnosed with an asbestos-

---

[8] The Court also rejects the contention that § 12-311 was meant to apply to asbestosis exclusively, while other more aggressive asbestos-related diseases (particularly mesothelioma) were to be treated differently.  The only mention of either disease is in the Legal Analysis where it is explained that the language of § 12-311 is based on § 340.2 of the California Code of Civil Procedure:

> [California] certainly has an interest in protecting innocent asbestosis victims from toxic tortfeasors.  Asbestosis may take up to 35 years to develop from first exposure. . . . [W]ith the passage of section 340.2, the Legislature codified a more liberal disability plus discovery rule, providing that the limitation period never commences to run for plaintiffs who know they have suffered injury or illness from asbestos exposure until "disability" has occurred.

> This delayed accrual rule is more in keeping with the gradually disabling nature of the disease.  Since asbestosis is a progressive lung disease, the product of prolonged exposure to asbestos fibers and dust, the disease may be detected before there has been any significant respiratory impairment or resulting partial or total disability. . . . Principles of fairness and social utility favor application of this remedial statute to plaintiffs such as Nelson.  It is for society's benefit as well as the individual's benefit that asbestosis victims should work as long as they are able to do so without placing their rights in jeopardy. . . . It would make no sense to penalize those victims who may have received an early diagnosis, particularly since there appears to be no evidence of a cure.

Legal Analysis at 3-4.  Although the distinction between asbestosis, mesothelioma, and other asbestos-related diseases was clearly known at the time § 12-311 was enacted, the legislature made no attempt to codify that distinction.  *See Dist. of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 397-99 (D.C. 1989) (discussing at length, in an opinion issued the same year in which the legislature enacted § 12-311, the distinguishing characteristics of the various asbestos-related illnesses).

related disease to continue to work if not disabled without being forced to bring suit at the time of diagnosis. This would, of course (and has been discussed in the cases examining the issue), possibly force individuals to stop working or complicate damage issues in suits brought based on exposure to asbestos and resultant injury.

The Court finds that this interpretation of the statute does not produce an "absurd result" or "obvious injustice."[9] Tolling the statutory period until after both the disability and discovery dates preserves a plaintiff's claim "until the full impact of their disease is known." (Comments of James R. Murphy at 3.) There is no dispute dispute that the disability and discovery dates occurred in this case on or before February 28, 2006, when Mr. Rocha was diagnosed with mesothelioma and no longer able to work. At that point, Mr. Rocha and Plaintiff were fully aware of the impact of Mr. Rocha's disease, and like *each and every* other plaintiff suing as a result of an asbestos-related injury and/or illness, had one year from that date in which to sue. To find otherwise would provide this particular Plaintiff a right not provided to any other plaintiff with an asbestos-related disease (to allow the date of death to impact the application of § 12-311). This Court's conclusion regarding the meaning of the statute puts all asbestos-related plaintiffs—whether inflicted with asbestosis, mesothelioma, a slowly progressing or rapidly progressing disease—on the same footing; each has one year from the later of discovery or disability in which to sue. This is what the statute prescribes and legislative history indicates was intended, and to do otherwise, the Court finds would be inconsistent with the law.

### C. Subsequent Clarification

The Court finds there is no basis upon which to apply the legislation enacted on October 20, 2010 in order to interpret the 1989 Council's intent in passing the original version of § 12-

---

[9] The Court recognizes the difficult result and is not unsympathetic. This, however, is not the role of the Court. Rather the Court is to, which it has done, give careful consideration to the law and facts, and the arguments of the parties.

311. Although the Court of Appeals has given effect to subsequent legislative clarifications, in this case the law does not provide a basis for the Court to do so particularly where a statutory scheme has been in place for more than twenty years without any prior change or clarification.

In *Winters v. Ridley*, 596 A.2d 569 (D.C. 1991), the Court of Appeals used legislation passed in 1989 to determine the intent of the City Council when it passed a 1986 "good time" credit statute for prison inmates. *Id.* at 578-79. In doing so, the Court noted that only two years had elapsed since the original legislation was enacted, that most of the Council members participated in both the original and subsequent actions, and that the 1989 resolution was unanimous and unambiguous. See *id.* In this case, however, twenty years has elapsed since the Council first acted. Importantly, there is no indication that any of the current Council members participated in the original legislative process and therefore must have relied (exclusively) on the same legislative history before this Court. The Court finds Plaintiff's reliance on *Winters* misplaced.[10]

### D. Retroactivity

Under District of Columbia law, the "general rule" is that "statutes are to be construed as having only a prospective operation, unless there is a clear legislative showing that they are to be given a retroactive or retrospective effect." *Bank of Am., N.A. v. Griffin*, 2 A.3d 1070, 1073-74 (D.C. 2010) (quoting *Wolf v. Dist. of Columbia Rental Accommodations Comm'n*, 414 A.2d 878, 880 n.8 (D.C. 1980)).[11] "A note of caution is in order. Retroactive interpretation by legislators

---

[10] The *Winters* court recognized that "[t]he present case is somewhat unusual, in that the 1989 Council not only amended the statute, apparently for purposes of clarification, but also passed a resolution explaining exactly what the 1986 Council had on its mind." *Id.* at 577. In this case, there is no such indication that the current Council members knew or even could have known what the 1989 Council had on its mind (or intended) when it enacted § 12-311.

[11] District of Columbia law also provides that emergency legislation takes effect immediately upon enactment and that "the life of an emergency act is to be measured prospectively from the date of enactment." *See* D.C. Code §§ 1-229(a), 1-233(c)(1) (1992); *RDP Dev. Corp. v. Dist. of Columbia*, 645 A.2d 1078, 1082 (D.C. 1994). In this case, the Act was passed after the case was brought and the Motion was filed.

of their past enactments should be approached with a measure of circumspection." *See Winters v. Ridley*, 596 A.2d at 577 ("The views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." (quoting *McIntosh v. Washington,* 395 A.2d 744, 750 (D.C. 1978))). And "[t]he interpretation of statutes is, in the final analysis, the responsibility of courts, not of subsequently elected legislative bodies." *Winters*, 596 A.2d at 577 (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 (1988)).

Despite the "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence," that presumption may be inapplicable if the legislation is remedial and/or procedural in nature, as opposed to one affecting substantive rights. *See Lacek v. Washington Hosp. Ctr. Corp.*, 978 A.2d 1194 (D.C. 2009); *Edwards v. Lateef*, 558 A.2d 1144 (D.C. 1989). In this line of cases, however, the Court of Appeals applied the law in existence at the time the case was filed, even though the plaintiffs' actual causes of action had accrued prior to the subsequent legislation's enactment and effective dates.   In both *Edwards* and *Lacek*, the applicable claims had been filed after the legislature had enacted legislation modifying a pre-existing law.

Here, neither the Act nor the Resolution contains language to indicate that the legislature intended retroactive application.  Unlike the cases cited by Plaintiff, the Complaint in this case was filed prior to the relevant legislation's enactment and effective dates.  Nothing in this case indicates that Plaintiff should be entitled to invoke the Act or Resolution to revive a claim that had expired by the time the action was initiated.

Accordingly, it is this 10th day of January 2011, hereby

**ORDERED**  that  Georgia-Pacific's  Motion  for  Partial  Summary  Judgment  is **GRANTED**.  It is further

**ORDERED** that judgment be entered in favor of the Georgia-Pacific, and Counts I, II, III, IV, V, and VI of Plaintiff's Complaint are hereby **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that Union Carbide's Motion for Summary Judgment as to All Claims is **DENIED AS MOOT**. It is further

**ORDERED** that to the extent that Union Carbide's Notice of Adoption of August 9, 2010 encompassed Georgia-Pacific-s Motion for Partial Summary Judgment, all claims as against Union Carbide are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Natalia M. Combs Greene
(Signed in Chambers)

**Copies to:**

Daniel A. Brown, Esq.
Brown & Gould, LLP
7700 Old Georgetown Rd., Ste.
500 Bethesda, MD 20814
dbrown@brownandgould.com

Robin Silver, Esq.
Miles & Stockbridge
10 Light Street
Baltimore, MD 21202
rsilver@milesstockbridge.com

Katherine S. Duyer, Esq.
Gavett and Datt, P.C.
15850 Crabbs Branch Way
Suite 180
Rockville, MD 20855
kduyer@gavettdatt.com

Neil MacDonald, Esq.
Hartel Kane Desantis & Howie, LLP
11720 Beltsville Drive, Ste. 500
Beltsville, MD 20705
nmacdonald@hartelkane.com

Richard Albert, Esq.
Steptoe & Johnson
1330 Connecticut Ave., NW
Washington, DC 20036
ralbert@steptoe.com

Scott Phillips, Esq.
Semmes, Bowen & Semmes
25 South Charles Street
Baltimore, MD 21201
sphillips@semmes.com

Scott Burns, Esq.
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, MD 21201
sburns@tvdingslaw.com

Steven J. Parrott, Esq.
Dehay & Elliston, LLP
36 S. Charles Street, Ste. 1300
Baltimore, MD 21201
sparrott@dehay .com

Edward C. Bacon, Esq.
Bacon Thornton & Palmer, LLP
6411 Ivy Lane, Ste. 706
Greenbelt, MD 20770-1411
ebacon@lawbtp.com

Joel D. Newport, Esq.
Moore & Jackson, LLC
305 Washington Ave., Ste. 401
Towson, MD 21204
newport@mooreiackson.com

Richard L. Flax, Esq.
Law Offices of Richard L. Flax, LLC
29 West Susquehanna Ave.
Ste. 550
Baltimore, MD 21204
richard.f1ax@zgf-law.com

**EXHIBIT 4**

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 11-CV-651

NIEVES ROCHA, APPELLANT



V.

GEORGIA-PACIFIC CORP., *ET AL.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAA-838-09)

(Hon. Natalia M. Combs Greene)

(Argued May 22, 2012                                        Decided October 24, 2012)

Before BLACKBURNE-RIGSBY and BECKWITH, *Associate Judges*, and KING, *Senior Judge*.

PER CURIAM: Appellant Nieves Rocha, whose husband Oscar Rocha died of a disease caused by exposure to asbestos, sued appellees Georgia-Pacific Corporation and Union Carbide Corporation on behalf of Mr. Rocha's estate. On January 12, 2011, the trial court granted summary judgment to appellees after determining that Ms. Rocha's suit was brought outside the one-year period set forth in D.C. Code § 12-311, which enacted a statute of limitations for asbestos-related claims. On appeal, Ms. Rocha contends that the legislative history of the statute, which makes clear the Council of the District of Columbia intended to liberalize the limitations provision governing asbestos-related actions, and a recent amendment to the statute, which clarifies its scope in cases such as Oscar Rocha's, both make plain that the trial court's exclusion of Ms. Rocha's claim was contrary to legislative intent. We conclude that the result triggered by the application of the one-year limitation to Ms. Rocha's claim, though a difficult result for Ms. Rocha, was not absurd under the terms of the statute, and that a recent amendment to the statute (creating a more liberal rule for people in Ms. Rocha's situation) cannot change the meaning of a law passed decades earlier by a different Council. We therefore affirm the judgment of the Superior Court.

2

## Background

Oscar Rocha, who worked as a painter and carpenter in the District of Columbia from 1971 to 1984, became ill on December 31, 2005, was unable to return to work, and was diagnosed with malignant mesothelioma, an asbestos-related illness, on February 28, 2006.  He died two years later, on February 10, 2008.  One year later, on February 10, 2009—just less than three years after Mr. Rocha's diagnosis—Ms. Rocha brought suit against Georgia Pacific, alleging it manufactured asbestos-containing products to which Mr. Rocha was exposed, and Union Carbide, alleging it supplied the bulk asbestos contained in those products.

On January 10, 2011, Superior Court Judge Natalia Combs Greene granted appellees' motion for summary judgment on the ground that the statute of limitations barred Ms. Rocha's lawsuit.  The court ruled that § 12-311 was "clear and unambiguous" and contained "no distinctions for actions based upon various (or different) asbestos-related illnesses."   The court also found that no extraordinary scenario justified looking beyond the plain meaning of the statute.

Ms. Rocha now seeks review of the trial court's conclusion that this claim was barred by the applicable statute of limitations.

## Analysis

D.C. Code § 12-311 (a) (2001), which was passed as part of the District of

Columbia Statute of Limitations Amendment Act of 1986, states:

(a)   In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following:

    (1)   Within one year after the date the plaintiff first suffered disability; or

    (2)   Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have

3

known, that the disability was caused or contributed to by
the exposure.

The act defines "disability" as "the loss of time from work as a result of the
exposure that precludes the performance of the employee's regular occupation."
D.C. Code § 12-311 (b) (2001). The legislative history of § 12-311 suggests that
the Council wanted to create a more liberal limitations statute—thus allowing a
year from the later of either the onset of disability or knowledge that it was caused
by exposure to asbestos rather than three years from the accrual of the cause of
action, the previous limitations period under D.C. Code § 12-301 (8)[1]—because it
was concerned about the "gradually progressing nature of asbestos-caused
diseases."

On October 5, 2010, several months after Ms. Rocha filed her complaint in
this case, the D.C. Council sought to clarify the intent of § 12-311 by adopting a
resolution—specifically, Resolution 18-642—that explicitly differentiated
mesothelioma, "an extremely aggressive, rapidly progressing tumor that affords
victims an average life span of 12 months from the date of diagnosis of the
illness," from asbestosis, which is "progressive in nature, causing disability
gradually, and often years after the first appearance of symptoms." The Resolution
declared that the application of § 12-311 to mesothelioma "renders a result that
stands in direct contrast to the goal of the legislation" to extend the statute of
limitations for asbestos-related illnesses, given that a plaintiff who "dies or is
disabled rapidly" is limited to the one-year statute of limitations for asbestos-

---

[1] D.C. Code § 12-301(8) (2001) states:

Except as otherwise specifically provided by law, actions for the
following purposes may not be brought after the expiration of the
period specified below from the time the right to maintain the action
accrues:

. . .

(8) for which a limitation is not otherwise specially prescribed — 3
years

4

related claims.  To rectify this perceived error, the Council passed the Asbestos Statute of Limitations Clarification Emergency Act of 2010, D.C. Act 18-585, on October 20, 2010.  The temporary act amended § 12-311 by adding a subsection that gave plaintiffs in asbestos-injury actions the longer of the one-year limitations period in § 12-311 (a) and the general three-year limitations period in § 12-301 (8).  Asbestos Statute of Limitations Clarification Emergency Act of 2010 (D.C. Act 18-585, October 20, 2010, 57 DCR 10134).  The act remained in effect for 90 days and was renewed twice[2] before it was codified as § 12-311 (c) on June 3, 2011. D.C. Code § 12-311 (c) (2011).  The act made no reference to retroactive application.

Ms. Rocha argues that the trial court erred in ruling that her claim was barred by § 12-311 because the statute is inherently ambiguous and because applying the statute to mesothelioma sufferers produces an absurd and unjust result.  She contends that the statute's legislative history and recent enactments by the D.C. Council confirm that the limitations period was meant to apply only to people suffering from asbestosis.

Ordinarily, "[i]n interpreting a statute, we first look to the plain meaning of its language, and if it is clear and unambiguous and will not produce an absurd result, we will look no further." *In re D.H.*, 666 A.2d 462, 469 (D.C. 1995).  We have nonetheless recognized a narrow class of circumstances in which a court may refuse to adhere strictly to the plain wording of a statute.  *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 755 (1983) (en banc).  Such "persuasive reasons" for doing so include circumstances where (1) "a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve," (2) the statute's literal meaning leads to absurd results, (3) adherence to the plain wording leads to an "obvious injustice," or (4) a court can "effectuate the

_____

[2] Public Safety Legislation Sixty-Day Layover Emergency Amendment Act of 2010, § 503 (D.C. Act 18-693, January 18, 2011, 58 DCR 640); Public Safety Legislation Sixty-Day Layover Congressional Review Emergency Amendment Act of 2011, § 503 (D.C. Act 19-45, April 20, 2011, 58 DCR 3701).

5

legislative purpose" of the statute as a whole only by refusing to strictly follow the statute's plain meaning. *Id.* at 754-55 (citations and internal quotation marks omitted); *see also Dobyns v. United States*, 30 A.3d 155, 159 (D.C. 2011). "These exceptions to the plain meaning rule should not, however, be understood to swallow the rule completely." *Peoples Drug*, 470 A.2d at 755.

We conclude at the outset that the language of D.C. Code § 12-311 is "clear and unambiguous." *D.H.*, 666 A.2d at 469. The statute's application to "any civil action for injury or illness based upon exposure to asbestos" sets forth a clearly defined class of disability originating from asbestos exposure—a class that unequivocally includes mesothelioma.[3] It is common for statutes to use general language to cover multiple sub-categories without rendering the statute ambiguous. *See, e.g., In re D.T.*, 977 A.2d 346, 354 (D.C. 2009) (stating that a criminal statute that failed to delineate human teeth as a dangerous weapon was not ambiguous but instead "recogni[zed] that infinite varieties of matter exist which, if included, would render the statute prolix."). We are not persuaded by appellant's claim that the known differences between asbestosis and mesothelioma create an ambiguity in the statute's clear terms.

Unless we identify a persuasive reason to reassess the statute in light of its legislative history, the plain language of the statute governs our analysis. *See Peoples Drug*, 470 A.2d at 755. The relevant legislative history consists of (1) a

---

[3] The Superior Court opinion upon which appellant relies, *Gwyer v. Celotex Corp.*, 117 Daily Wash L. Rptr. 2617 (Super. Ct. D.C. 1989), is not to the contrary. There, the trial court found the statute to be ambiguous on the question whether it covered all asbestos-related injuries or only those caused by occupational exposure. After reviewing the legislative history, the court determined that the statute applied to "employees who are disabled from work because of exposure to asbestos, and not to the broader, general population of potential victims of such illness or injury." In appellant's view, just as the court in *Gwyer* (a decision that is not binding on us) interpreted the statute to apply to occupational claimants alone, this court should interpret it to apply only to claimants suffering from asbestosis. Any ambiguity pertaining to the statute's application to occupational exposure versus all exposure, however, is quite different from the question whether "injury or illness based on exposure to asbestos" includes mesothelioma or only asbestosis.

6

legal analysis of the statute; (2) the transcribed comments of James R. Murphy, the acting corporation counsel at the time of the enactment; and (3) a committee report.

The "Legal Analysis of the District of Columbia Statute of Limitations Amendment Act of 1986" stated that § 12-311 would "add a new and more liberal limitations provision" to asbestos-related claims, "justified by the gradually progressive nature of asbestos-caused diseases, and by the fact that even after the appearance of symptoms, actual disability may not occur until years later."[4] Similarly, the acting corporation counsel's comments explained that the then-new legislation recognized "that asbestos-related diseases are progressive in nature, causing disability gradually, and often years after the first appearance of symptoms," and the bill would thus "protect victims by preserving their right of action until the full impact of their disease is known." Finally, the November 21, 1986, Report of the Committee on the Judiciary explained that the bill addressed "employee disability claims due to asbestos related injury." The report articulated two justifications for time limitations on litigation: (1) "the search for truth which may be seriously impaired by the loss of evidence, whether by death or disappearance of documents, or otherwise," and (2) "the potential defendant's interests in security against stale claims and in planning for the future without the uncertainty inherent in potential liability." The liberalized statute of limitations nevertheless was justified, the report stated, "because asbestos related injuries have been proven to be progressive in nature and the appearance of symptoms and actual disability may not occur until many years later."

In reviewing this history of § 12-311, we cannot conclude that the statute fails to effectuate its purpose or produces absurd or unjust results. We cannot conclude, that is, that a stated goal of liberalization somehow renders it absurd to

---

[4] The analysis relied on a California case, *Nelson v. Flintkote Co.*, 172 Cal. App. 3d 727, 730 (Ct. App. 1985), discussing the slow-progressing nature of asbestosis and the need for a fair limitations statute where sufferers may have many productive years of employment after diagnosis. It also cites *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111 (D.C. Cir. 1982), for the principle that "diagnosis of 'mild asbestosis' did not start the statute of limitations clock running as to the separate and distinct asbestos-related disease of mesothelioma."

7

require mesothelioma victims to sue within a year after disability and discovery of the cause of disability. The statute's history and the related case law make clear that the Council was aware of the existence of asbestosis and mesothelioma, the slow-progressing nature of these diseases, and the differences in how they manifest themselves. *See, e.g., Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1083 (5th Cir. 1973) ("A second disease, mesothelioma, is a form of lung cancer caused by exposure to asbestos. . . .and there is a similarly long period between initial contact and apparent effect."). The legislative analysis specifically cited the D.C. Circuit's decision in *Wilson v. Johns-Manville Sales Corp*, 684 F.2d 111 (D.C. Cir. 1982), in its review of the proposed new statute of limitations. In that case, the court noted the distinction between asbestosis and mesothelioma, stating that asbestosis "has a latent period of 10 to 25 years between initial exposure and apparent effect" and that "[e]ven longer periods of time may pass before mesothelioma manifests itself." *Id.* at 115 n.21. The case upon which *Wilson* relies for the latter observation about mesothelioma, *Keene Corp. v. Ins. Co. of North America*, 667 F.2d 1034 (D.C. Cir. 1981), contains a detailed description of the two conditions:

> Asbestosis is a fibrous condition of the lungs, which is caused by asbestos fibers reaching the alveoli. Once begun, the condition progresses without additional inhalation of asbestos, but it becomes even more serious if inhalation continues. The seriousness of the disease in individual cases depends on the duration and intensity of inhalation and on individual idiosyncrasy.
>
> Mesothelioma is a malignant tumor of the lining of the lungs or the lining of the peritoneum, which surrounds the organs of the gastrointestinal tract. It is well-established that prolonged inhalation of asbestos fibers causes mesothelioma. The disease can develop many years after inhalation ceases, and can manifest itself several months after it begins to develop.

*Id.* at 1038 n.3 (citations omitted).

We presume that the legislature acts "rationally and reasonably, with an awareness of the goals of the statutory scheme as a whole." *In re C.L.M.*, 766 A.2d 992, 996-97 (D.C. 2001) (citing *Hessey v. District of Columbia Bd. of Elections & Ethics*, 601 A.2d 3, 16 n.28 (D.C. 1991)). "[N]o law pursues its

8

purpose at all costs," and "the textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." *Rapanos v. United States*, 547 U.S. 715, 752 (2006). Moreover, while a "statutory formula could work an injustice in an individual case," we have recognized that "[i]t is not within the judicial function . . . to rewrite the statute, or to supply omissions in it, in order to make it more 'fair.'" *1841 Columbia Rd. Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 575 A.2d 306, 308 (D.C. 1990) (citing *Frain v. District of Columbia*, 572 A.2d 447, 448 (D.C. 1990); *Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 49-50 (D.C. 1989)).

This result, though lamentable for Ms. Rocha, does not equate with a result that is absurd or unjust.[5] Mr. Rocha was diagnosed when the illness became disabling. The same scenario could occur in the case of a patient suffering from asbestosis—a slow-progressing disease that can be diagnosed many years after asbestos exposure. As we have recognized in other situations, "perhaps the give and take of the political process has, in this instance as in others, produced less than perfect legislation." *Hornstein v. Barry*, 560 A.2d 530, 534 (D.C. 1989). "Perfection, however, is not readily achievable, and we cannot say that the consequences of a literal reading of the statute are so absurd or unjust that we may rewrite it to achieve a result which some might deem more equitable." *Parreco & Son*, 567 A.2d at 48.

Having determined that none of the exceptions from *Peoples Drug* gives us a persuasive reason to look beyond the plain meaning of the statute, we now consider what effect, if any, the recent legislative enactments have upon our analysis of § 12-311. The trial court in this case relied on three key facts—the length of time between the 1986 enactment and the legislative action in 2010, the absence of any reference to retroactivity in the recent amendment, and the fact that the initial complaint was filed before the amendment was enacted—to support its conclusion that the recent resolution and amendment could not clarify the meaning

---

[5] To the extent this is a case of legislative oversight, we are powerless to correct it. *See, e.g., Turner v. Bayly*, 673 A.2d 596, 601 (D.C. 1996) ("In any event, the failure of the 1992 amendment . . . at most indicates legislative mistake; it does not compel a statutory interpretation that puts a gloss on language not assuredly called for.")

9

of § 12-311 or revive Ms. Rocha's claim. We agree with the trial court in each respect.

"[T]he Supreme Court often has said 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *Winters v. Ridley*, 596 A.2d 569, 579 (D.C. 1991) (Ferren, J., concurring) (quoting *United States v. Price*, 361 U.S. 304, 313 (1960)). That is particularly true in this case, where we are construing legislation more than 25 years after the § 12-311 was enacted in 1986. As this court stated in *Tippett v. Daly*, 10 A.3d 1123 (D.C. 2010) (en banc), the "hazard" of inferring intent was "greatest" in circumstances where two decades had passed and the composition of the Council had changed. *Id.* at 1132; *see also United States ex rel. Long v. SCS Bus. & Technical Inst., Inc.*, 173 F.3d 870, 878–79 (1999) ("Post-enactment legislative history . . . becomes of absolutely no significance when the subsequent Congress . . . takes on the role of a court and in its reports asserts the meaning of a prior statute."); *cf. Winters*, 596 A.2d at 578 (Schwelb, J., concurring) (stating that considerable weight should be given to subsequent legislation's characterization of a prior statute where "[r]elatively little time elapsed between the enactment of the [District of Columbia Good Time Credits Act of 1986] and the Council's actions in 1989" and where "[m]ost of the legislators were members of the Council at both relevant times."). Given the clarity of the terms of § 12-311, and given that the recent amendments did not so much clarify the prior statute as create an exception to it in circumstances such as Mr. Rocha's, we are unwilling to construe the recent amendments as an expression of the intent of the Council that passed § 12-311.

Nor can we conclude that Ms. Rocha is entitled to retroactive application of the 2010 legislation (D.C. Act 18-585) providing that a plaintiff in an asbestos-injury action shall have the longer of the limitation period in § 12-311 and the standard three-year limitation period in § 12-301 (8). Act 18-585 makes no reference to retroactive application. In the absence of any specific prescription by the Council of the statute's reach, the question becomes whether the statute would "operate retroactively," meaning whether it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed[.]" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). If so, the Supreme Court stated in *Landgraf*, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.* at 280; *see also Owens-Corning Fiberglas Corp.*

10

*v. Henkel*, 689 A.2d 1224, 1235 (D.C. 1997) ("Generally, if a new statute of limitations does not specifically repeal an old one, then the old one controls actions which had already accrued where the new statute was enacted.").

While applying retroactivity analysis to laws creating limitations periods for various causes of action can be a complicated endeavor, we conclude in the circumstances of this case that Act 18-585 does not apply retroactively to revive Ms. Rocha's claim.  Most notably, as the statutory limitation period for Ms. Rocha's claim had expired before the Council passed Act 18-585, reviving the claim on the basis of Act 18-585 would "operate retroactively" and have substantive effect by creating a liability that had not existed at the time the new law was passed. *Landgraf*, 511 U.S. at 280.

"[A]fter consulting the language, structure, and legislative history" of D.C. Code § 12-311, "we conclude that the statute is not ambiguous and we apply its plain meaning."  *Tippett*, 10 A.3d at 1134.  As the plain meaning of § 12-311 establishes that "[i]n any civil action for injury or illness based upon exposure to asbestos," the suit must be brought within one year of disability or knowledge that the disability was caused by asbestos exposure, and as Ms. Rocha's action was brought outside of that period, § 12-311 bars Ms. Rocha's claims, and we affirm the grant of summary judgment.

*So ordered.*

ENTERED BY DIRECTION OF THE COURT:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Copies to:

Honorable Natalia Combs Greene

George Tankard, III, Esquire
315 North Charles Street
Baltimore, MD 21201

Mark Linder, Esquire
Charles Siegel, Esquire
Loren Jacobson, Esquire
Waters & Kraus, LLP
3219 McKinney Avenue
Dallas, TX 75204

Robin Silver, Esquire
Miles & Stockbridge
10 Light Street
7th Floor
Baltimore, MD 21202

Mitchell Mirviss, Esquire
Venable LLP
750 East Pratt Street
Suite 900
Baltimore, MD 21202

Steven J. Pratt, Esquire
36 South Charles Street
Suite 1300
Baltimore, MD 21201