## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NIEVES ROCHA, Individually and    :
as the Personal Representative of the    :
Estate of OSCAR ROCHA, Deceased,  :
                            :
          Plaintiff,       :     Case No. 1:14-cv-01136 (RC)
                            :     Judge Rudolph Contreras
v.                           :
                            :
BROWN & GOULD, LLP,    :
DANIEL A. BROWN and    :
DAVID M. LIPMAN, P.A.,    :
                            :
          Defendants.   :

### SECOND AMENDED COMPLAINT
### AND JURY DEMAND

Nieves Rocha, individually and in her capacity as the personal representative

of the Estate of Oscar Rocha, through counsel, states as her Second Amended

Complaint against Defendants Brown and Gould, LLP, Daniel A. Brown, David M.

Lipman, P.A. and Doe Defendants 1-5 as follows:

### NATURE OF THE CASE

1.     This is a legal malpractice and breach of contract action that seeks

monetary relief.  Defendants promised to bring a timely asbestos product liability

personal injury claim for Plaintiff Nieves Rocha ("Mrs. Rocha") and the estate of

her late husband, Oscar Rocha, and prosecute the action to completion.

2.    Defendants failed to file Plaintiff's action in Maryland whose limitations provision would have permitted the action to proceed in that forum to verdict. Instead, Defendants negligently, and in breach of their promise to Mrs. Rocha, filed the action in the Superior Court of the District of Columbia all the while knowing that the District's limitations period had already expired.

3.    Defendant Brown made an express promise to Mrs. Rocha that he would get the District of Columbia statute of limitations changed to make her claim timely there. Brown drafted legislation to effect the change but failed to include a retroactive provision in the emergency legislation which was passed by the Council of the District of Columbia ("D.C. Council") thereby dooming Plaintiff's District of Columbia action to dismissal by summary judgment on limitations grounds. The summary judgment was thereafter affirmed on appeal by the District of Columbia Court of Appeals.

4.    During his initial meeting with Mrs. Rocha, and before he filed the District of Columbia case, Defendant Brown made an express promise to Mrs. Rocha that he would file a second action for her in a jurisdiction that (unlike the District of Columbia) he was certain was timely and could proceed to trial on the merits. During the pendency of the District of Columbia action, Brown (who is not admitted in Virginia) filed the second action in Virginia by asking a Newport News, Virginia lawyer to file the case for him. However, the Virginia action was barred

2

by the Commonwealth's statute of repose governing actions for damages arising

out of defective or unsafe condition of improvements to real property (Va. Code §

8.01-250) and was therefore insufficient to perform Brown's express promise and,

consequently, amounted to a breach of contract.  Defendants were also negligent

by bringing Mrs. Rocha's claims in Virginia.  Defendants could have and should

have brought Mrs. Rocha's case in Maryland before the state's three-year statute of

limitations lapsed, but failed to do so.

## PARTIES

5.      Plaintiff Nieves Rocha  ("Mrs. Rocha"), a resident of the

Commonwealth of Virginia, is the widow of Oscar Rocha and serves as the

personal representative of the Estate of Oscar Rocha.

6.      Defendant Brown & Gould, LLP ("B&G") is a law firm based in

Bethesda, Maryland and incorporated in that state.  B&G attorneys regularly

appear in cases pending in the District of Columbia's local and federal courts.

7.      Defendant Daniel A. Brown ("Brown") is an attorney and a founding

member of B&G.  He is a member of the District of Columbia and Maryland bars.

8.      Brown is not admitted to practice law in the Commonwealth of

Virginia.

9.      Steven M. Gould, Brown's partner, is admitted to practice law in

Virginia.

10.    Defendant David M. Lipman, P.A. ("Lipman") is a law firm based in Miami, Florida and incorporated in that state. Lipman is admitted to practice law in the District of Columbia. At all times relevant to this litigation, Lipman operated and did business under the fictitious name "The Lipman Law Firm."

11.    Doe Defendants are individual lawyers and law firms, whose identity is unknown to Plaintiff, that may have participated in the conduct, occurrences and omissions alleged in this Complaint. Plaintiff reserves the right to name one or more such Doe Defendants as a party-defendant should discovery establish or suggest the need to do so.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 which provides that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

13.    This Court has personal jurisdiction over Defendants under D.C. Code § 13-423 since their business and tortious activities in the District of Columbia injured Plaintiff and the estate of her late husband, as described and alleged herein.

14.    This judicial district is a proper venue for this litigation because "a substantial part of the events or omissions giving rise to the claim occurred [here]." 28 USC § 1391(b)(2).

4

## FACTS COMMON TO ALL COUNTS

15.    At all times relevant to this litigation, Defendant Brown promoted

himself as a specialist in prosecuting asbestos personal injury claims.

16.    Brown claims on his firm's website to have "achieve[d] what is

believed to be the largest individual asbestos settlement in the District of Columbia

and has obtained millions of dollars in awards and settlements for his clients."

17.    At all times relevant to this action, Lipman has promoted itself as a

law firm that specializes in prosecuting asbestos personal injury claims.

18.    Lipman's founder, David M. Lipman, claims on his firm's website

that "[s]ince 1986, [he] has practiced exclusively in the area of asbestos personal

injury litigation [and] has represented approximately 3,000 clients in asbestos

related cases."

19.    On information and belief, in or about 2004, Defendants entered into

an agreement to solicit asbestos disease product liability cases in the District of

Columbia, Maryland and Virginia.  Lipman agreed to fund a television advertising

campaign to locate potential mesothelioma and lung cancer asbestos cases.

Defendants agreed to jointly develop, file and prosecute the asbestos-cancer cases

generated by the campaign and share the attorney's fees generated by them.

20.    In early February 2009, Mrs. Rocha saw Defendants' television

advertisement while at her Dale City, Virginia home.   Mrs. Rocha called the toll-

free number in the advertisement because her husband, Oscar Rocha, had died from pleural mesothelioma. A meeting between Mrs. Rocha and Brown was scheduled for February 9, 2009.

21.    On February 9 and 10, 2009, Brown met with Plaintiff Nieves Rocha and her adult son, Michael Rocha, to discuss Defendants' representation of Mrs. Rocha and her late husband's estate in an asbestos product liability lawsuit.

22.    During the meetings, Brown learned that Plaintiff's husband, Oscar Rocha, had been diagnosed with pleural mesothelioma on February 28, 2006, and soon thereafter had become totally disabled from work because of the cancer. He also learned that Oscar Rocha died from pleural mesothelioma on February 10, 2008.

23.    Brown knew that asbestos litigation is a highly specialized field of product liability law, requiring familiarity with complex medical, industrial hygiene and occupational medicine issues that surface in virtually every case.

24.    Brown also knew that asbestos attorneys must have a working knowledge of the history of this field of litigation which has led to the bankruptcies of many of the asbestos-manufacturing companies in order to navigate the client to the best possible result.

25.    By the time he met the Rochas, Brown had at least twenty years of experience representing the rights of asbestos victims and had represented in

excess of one hundred asbestos clients, obtaining millions of dollars of compensation for the victims and their families.

27.    Brown knew that while asbestosis and lung cancer usually result from repeated exposure to asbestos over many years, mesothelioma can result from much shorter exposure.   Brown also knew that many people have been exposed to asbestos products including carpenters and painters.

28.    During his interviews with the Rochas, Brown learned that Oscar Rocha had been employed as a carpenter and painter from approximately 1971 through 1984 throughout the Washington metropolitan region.

29.    Brown knew that as a carpenter and painter, Oscar Rocha installed and finished drywall -- work that involved the use of and exposure to asbestos-containing products, including joint compounds and paints.

30.    Brown knew, or should have known from his experience in handling asbestos cases, that prior to 1977, drywall installation and finishing work routinely involved the use of joint compound, a paste-like substance used to seal the joints between sheets of drywall, which releases significant amounts of asbestos fibers when it is sanded during routine installation and finishing.

31.    Brown knew or should have known from his experience in handling asbestos cases that joint compounds contained asbestos until 1977, when Consumer Product Safety Commission banned the use of asbestos in joint

compound products, but did not recall existing asbestos-containing products then in the stream of commerce or require their removal from buildings in which they had been installed.

32.     Brown knew or should have known from his experience in handling asbestos cases that prior to 1977, asbestos-containing Georgia-Pacific Ready-Mix Joint Compound and other asbestos-containing joint compound products were heavily used by carpenters and painters in Maryland in residential and commercial construction projects.  He also knew or should have known, that Union Carbide Corporation supplied most of the asbestos fiber contained in Ready-Mix.

33.     Brown knew or should have known from his experience in handling asbestos cases that after 1977, carpenters and painters were (and are) still regularly exposed to asbestos during remodeling work in houses and commercial buildings constructed before 1977 -- work which often involves the removal and tearing out of drywall sheets joined with asbestos-containing joint compound which release high levels of carcinogenic asbestos fibers.

34.     Brown knew or should have known from his experience in handling asbestos cases that Oscar Rocha was highly likely to have been exposed to asbestos in Maryland because he knew that carpenters and painters like Oscar Rocha frequently traveled to jobsites located in all three local jurisdictions (Maryland, the District of Columbia and Virginia) throughout their careers.

35.     Brown knew or should have known from his experience in handling asbestos cases, that he could verify that Oscar Rocha worked in Maryland by applying for and obtaining, a Social Security Administration ("SSA") detailed earnings report for Oscar Rocha.

36.     On or about February 10, 2009, Brown agreed to take Mrs. Rocha's case.  Brown told Mrs. Rocha that he planned to file her case in the District of Columbia even though it was likely barred by the existing statute of limitations, D.C. Code § 12-311.

37.     Brown made an express promise to Mrs. Rocha that he would get the law changed to ensure her case would be deemed timely by the D.C. courts.

38.     Brown also made an express promise to Mrs. Rocha that he would file suit in a second jurisdiction in which he was certain the statute of limitations had not lapsed, so in the event he was unsuccessful in getting § 12-311 amended, she would still be able to recover on her claim for damages against the companies whose asbestos-containing products her husband had been exposed to.

39.     Mrs. Rocha relied on Brown's express promises when she retained Defendants to pursue her asbestos case.

40.     Thereafter, on February 10, 2009, Rocha signed a form "retainer agreement" that Brown handed to her.

41.   Before she left his office, Brown gave Mrs. Rocha a 30-page questionnaire concerning her husband's work and medical history and a SSA form for her to sign that permitted Brown to obtain her late husband's Social Security detailed earnings information for the years 1968 through and including 2006.

42.   On February 12, 2009, Mrs. Rocha returned the completed questionnaire and the signed SSA form to Brown *via* Federal Express.  Brown received the documents on or about February 13, 2009.

43.   After his interview with the Rochas, Brown knew or should have known from his experience in handling asbestos cases, that Oscar Rocha was likely to have been exposed to asbestos-containing products in Maryland and that Mrs. Rocha's lawsuit could be timely filed in Maryland because that jurisdiction's three-year statute of limitations for asbestos cases (Md. Courts And Judicial Proceedings Code Ann. § 3-904) had not yet expired.

44.   Brown also knew or should have known from his experience in handling asbestos cases, that Mrs. Rocha should not bring her action in the District of Columbia as it was already time-barred in that jurisdiction by D.C. Code § 12-311 -- a specific limitations provision for asbestos disease claims such as Plaintiff's enacted as part of the District of Columbia Statute of Limitations Amendment Act of 1986 -- that provides: "(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the

10

action shall be the latter of the following: (1) Within one year after the date the plaintiff first suffered disability; or (2) *Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that the disability was caused or contributed to by the exposure.*" (emphasis supplied).

45.    The statute defines "disability" as "the loss of time from work as a result of the exposure that precludes the performance of the employee's regular occupation." D.C. Code § 12-311(b).

46.    After his interview with the Rochas, Brown knew that Oscar Rocha had become totally disabled from mesothelioma upon his diagnosis of the terminal cancer in 2006; and therefore, Oscar Rocha's estate's survival and wrongful death actions were time-barred in the District, before his initial meeting with Mrs. Rocha on February 9, 2009.

47.    Nevertheless, on February 10, 2009, Brown drafted Mrs. Rocha's complaint and filed it in the Superior Court of the District of Columbia -- 18 days short of the three-year anniversary of Oscar Rocha's diagnosis of mesothelioma on February 28, 2006.

48.    The complaint named Georgia-Pacific, Union Carbide and seven other companies that manufactured or distributed asbestos–containing products.  The action was entitled *Nieves Rocha v. Georgia-Pacific Corporation, et al.* and

11

docketed as case number 2009 CA 000838 A (the "District of Columbia Action").

Two of the defendants named in the lawsuit were Maryland-based companies:

AC&R Insulation, Inc. and Walter E. Campbell Company, Inc.

49.     The case was later assigned to the calendar of Judge Natalia Combs

Greene.

50.     The complaint alleged, *inter alia*, that Oscar Rocha was exposed to

the defendant-companies' asbestos products at jobsites "*in and around the District

of Columbia*" and sought a total of $ 60,500,000 in damages (emphasis supplied).

51.     Brown is a member of the District of Columbia Trial Lawyers

Association ("TLA").

52.     The TLA is a voluntary, nonprofit bar association of, by, and for

District of Columbia trial lawyers who primarily represent plaintiffs in personal

injury lawsuits.

53.     The TLA has a Legislative Committee, comprised of some of its

members, whose avowed purpose is to "combat[] tort 'reform' and otherwise

promote and protect our clients' interests in legislative and regulatory spheres."

The committee's "chair" in 2009 was (and is) James W. Taglieri of the law firm

Cadeaux, Taglieri & Notarius, P.C. located in the District.

54.     After meeting with the Rochas and during the week of February 9,

2009, Brown called Taglieri to ask his help in getting D.C. Code § 12-311

amended to make Mrs. Rocha's claim timely filed.   On February 16, 2009, Brown

sent a letter via Federal Express to Taglieri that read as follows:

> Dear Jim:
>
> Enclosed herewith please find a copy of a short memo on the topic of
> the D.C. statute of limitations for asbestos claims. I have attached
> relevant code provisions and case law as well. As we discussed last
> week, and as the memo sets forth, the statute can have the backwards
> effect of curtailing the time in which a claimant can file his suit when
> its legislative intent was to expand plaintiffs' rights. I wanted to get
> this material to you in advance of what I understand to be a
> Wednesday meeting of your legislative committee...

Brown's "memo" stated, in part:

> In Maryland, an asbestos-injured claimant must file a claim within 3
> years from the date he knew, or should have known, of the cause of
> his injury. Thus, Maryland's statute mirrors the 3-year limit in D.C.'s
> general statute of limitations, § 12-301(8). Moreover, in the case of
> death caused by asbestos exposure, Maryland law requires a suit be
> filed within 3 years of discovery, but not later than 10 years from
> death. MD-Code, Courts and Judicial Proceedings, § 3-904(g)(2). D.C.
> § 12-311 (c), on the other hand, requires an asbestos-related wrongful
> death action be filed within 1 year of discovery. Therefore, Maryland
> law provides asbestos victims greater protections through the courts.

55.   On information and belief, neither Taglieri nor his Legislative

Committee took action on behalf of Brown to amend § 12-311 in 2009.

56.   On February 19, 2009, Michael Rocha sent the following email to

Brown:

> In our meeting in your office, you mentioned that we need to decide
> which state would be the second state wherein we would file the
> lawsuit. What is our strategy here? Is there a deadline for doing this
> tomorrow since the 3 year anniversary of the diagnosis is this Sunday

the 22nd? Please call my work phone if you would like to discuss[.]

57    Brown, a seasoned Maryland lawyer, did not respond to Michael

Rocha's email and then inexplicably failed to file Mrs. Rocha's action in Maryland

and thereby deprived her of that state's three-year statute of limitations that applied

to her claims.   Had Brown filed Plaintiff's action in Maryland, it would have

proceeded to trial in the normal course of the asbestos litigation pending there.

58.    The general Maryland statute of limitations is Md. Code, Cts. & Jud.

Proc. Art. § 5-101: "A civil action at law shall be filed within three years from the

date it accrues unless another provision of the Code provides a different period of

time within which an action shall be commenced."

59.    Md. Code, Cts. & Jud. Proc. Art. § 5-113 provides a special statute of

limitations for occupational disease claims, such as those asserted by Mrs. Rocha:

"An action for damages arising out of an occupational disease shall be filed within

3 years of the discovery of facts from which it was known or reasonably should

have been known that an occupational disease was the proximate cause of death,

but in any event, not later than 10 years from the date of death."

60.    On or about May 11, 2009, Brown requested SSA produce a detailed

earning record report on Oscar Rocha. On or about August 20, 2009, SSA issued

the report, which Brown received soon thereafter.  The report definitively

established that Oscar Rocha worked for several Maryland employers during the

years in which Brown knew or should have known from his experience in handling asbestos cases, that asbestos-containing joint compound products were in heavy use in Maryland by carpenters and painters like Oscar Rocha. The Maryland employers included: Ralph D. Mitchell Construction Company, Inc. (1972 and 1973), R & D Contractors (1973), P. Vasco Company (1975) and Ed Tansill Inc. (1975). However, because of Defendants' negligence and breach of contract, the Maryland limitations period had already expired and Mrs. Rocha's case could not be filed in that state.

61.     February 10, 2010 was the two-year anniversary of Oscar Rocha's death.

62.     Virginia has a two-year statue of limitations for wrongful death actions, VA Code § 8.01–244(B).

63.     Virginia wrongful death actions do not provide for the recovery of damages for the pain and suffering of the victim, unlike District of Columbia and Maryland survival actions, which do.

4.     In the District of Columbia Action, Brown stated that Oscar Rocha "suffer[ed] extreme physical pain and discomfort, as well as great mental anguish before his death." Complaint at ¶ 5.

65.     In the morning of February 9, 2010, Brown called his friend, attorney Erin Jewell (formerly Hieronimus) of the Newport News, Virginia law firm of

Patten, Wornom, Hatten & Diamonstein, L.C. Brown asked Jewell to file a Virginia wrongful death asbestos case "on his behalf" for Mrs. Rocha before the Virginia statute of limitations expired the following day.

66.     On information or belief, Brown did not consult with his partner, Steven M. Gould, or any other lawyer admitted to practice in Virginia about the prudence of bringing Mrs. Rocha's second action in Virginia.

67.     Brown told Jewell that "the courthouses in Maryland and Northern Virginia areas were closed because of a severe snow storm, and [he was] unable to travel to Virginia to file the case [him]self." Ms. Jewell agreed to "ma[ke] this accommodation to [Brown]" and file the new action for him.

68.     Brown knew or should have known that Newport News, Virginia was an improper venue for the case because Oscar Rocha never lived, worked or was exposed to asbestos in Newport News nor did he die there.

69.     Brown knew or should have known that Mrs. Rocha's claims were barred by operation of Virginia's statute of repose governing actions for damages arising out of defective or unsafe condition of improvements to real property, Va. Code § 8.01-250.

70.     Brown did not consult with Mrs. Rocha before engaging Jewell and her firm to file the Virginia action.

71.     Brown did not sign a retainer agreement with Ms. Jewell or the Patten

firm.

72.    Mrs. Rocha did not sign a retainer agreement with Ms. Jewell or the Patten firm, nor was she ever asked by Brown or Jewell to sign one.

73.    Jewell considered Brown to be her client and not Mrs. Rocha.

74.    Jewell took her orders from Brown and never consulted with Mrs. Rocha or contacted her before Jewell acted for Brown.

75.    Jewell was Brown's agent.

76.    On February 10, 2010, Jewell filed in the Circuit Court for Newport News, a Virginia wrongful death action captioned "*Nieves Rocha, Individually and on Behalf of the Estate of Oscar Rocha, Deceased v. Bondex International, Inc., et al.* which was docketed as case number CL1000316TF ("the Virginia Action").

77.    Brown has admitted in the instant litigation that the Virginia Action was timely filed:  "The complaint filed by the B&G Defendants in Virginia for Rocha's wrongful death was filed on 2/10/10, within the statute of limitations for asserting that claim." Document 22-1 at 8.

78.    Brown directed Jewell not to serve the complaint in the Virginia Action on any of the defendants; and therefore, Jewell did not request service of the complaint on any of the defendants through the Secretary of the Commonwealth.

79.    On June 8, 2010, Brown spoke with Taglieri again and sent this letter to him:

> I am enclosing a copy of my letter to you dated February 16, 2009 regarding the above referenced statute, as well as a brief memo regarding the problems presented by the statute for mesothelioma victims who are immediately disabled upon diagnosis. In a nutshell - this statute that is designed to liberalize and expand claimants' rights can be misconstrued to shorten the statute of limitations to one year from diagnosis for the most severely injured asbestos plaintiffs.

* * *

> I understand that your next meeting is on June 16. Please include this topic on the agenda if you are able to do so. I represent the widow of a deceased mesothelioma victim whose case is scheduled for trial in January of 2011 in DC Superior Court. The case will likely be on the receiving end of a motion for summary judgment on the statute of limitations issue. It would be criminal for this statute to be read in such a way to foreclose my client's rights.

80.    Later on June 8, 2010, Brown sent a fax to Taglieri "[p]er our conversation re: ASBESTOS S.O.L." (capitalization in the orginal). Brown "enclosing[ed]" two proposed edits to the existing statute. One of Brown's proposals amended § 12-311 by including this new language: "(d) This section shall not be applied to shorten the time period otherwise available to an asbestos-injured plaintiff under D.C. Code sec. 12-301(8) or D.C. Code sec. 16-2702." Brown failed to include, in either proposal language, to indicate that the legislature intended retroactive application of the amendments.

81. By 2009, it was well established in District of Columbia law that statutes are to be construed as having only prospective operation unless there is a clear legislation showing that they are to be given a retroactive or retrospective effect.

82. In 1989, the D.C. Circuit, in *Wesley Theological Seminary v. United States Gypsum Co.*, 876 F.2d 119, 121-23 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1003 (1990), held that the District of Columbia's legislature did not offend the Constitution by giving retroactive effect to the 1987 amendments to the District's asbestos statutes of limitation – amendments that had the effect of reviving time-barred asbestos claims.

83. On June 17, 2010, Defendants in the District of Columbia Action took the deposition of Mrs. Rocha. In her deposition, Mrs. Rocha testified concerning her husband's use of asbestos containing Georgia-Pacific Ready Mix Joint Compound and his exposure to dust released from the material when he sanded it after it had been applied to drywall sheets.

84. On August 6, 2010, Georgia-Pacific filed a motion for summary judgment in the District of Columbia Action and argued that all of Plaintiff's claims were barred as a matter of law on the grounds that the applicable statute of limitations, D.C. Code § 12-311, had expired before Plaintiff filed her complaint.

85. Georgia-Pacific argued that Section 12-311 controlled because Mr.

Rocha developed and died from an asbestos-related illness, mesothelioma, as a result of continued exposure to asbestos. Georgia-Pacific contended that Section 12-311 governs "any civil action for injury or illness based upon exposure to asbestos" and provided a plaintiff one year from the "date the plaintiff first suffered disability" or the date "the plaintiff either knew, or . . . should have known that the disability was caused or contributed to by asbestos."

86.   Further, Georgia-Pacific argued it is undisputed that Mr. Rocha was diagnosed with mesothelioma and became disabled on or before February 28, 2006, and that because Plaintiff's claim was not filed until nearly three years after disability and diagnosis, the claim is barred by the statute's one-year limitation period.

87.   Before filing an opposition to Georgia-Pacific's motion, Brown sought and received numerous extensions of time from Judge Combs Greene in which to file his brief. Brown did this to buy time to amend Section 12-311.

88.   On information and belief, D.C. Councilman Phil Mendelson served as a willing conduit through which the TLA introduced and achieved enactment of District of Columbia legislation that the organization wanted.

89.   On September 27, 2010, Brown sent an email to Michael Rocha attaching "legislative materials" that had been "transmitted to [D.C.] Councilman Mendelson's office for consideration."

90.    Attached to Brown's September 27, 2010 email were two documents:
(1) "Memorandum Re: Urgent Legislative Action For D.C. Code § 12-311 – The
Statute Of Limitations For Asbestos Claims" and (2) Proposed Resolution "To
declare the existence of an emergency with respect to clarification of D.C. Code
sec. 12-311 'Actions Arising out of Death or Injury Caused by Exposure to
Asbestos.'" On information and belief, Brown played a substantial role in drafting
aforementioned legislation.

91.    The Memorandum gave the following explanation for the "emergency"
classification of the proposed legislation:

### BASIS FOR EMERGENCY STATUTORY CLARIFICATION

*In a case presently pending before the Superior Court for the
District of Columbia, Rocha v. Georgia Pacific, et al., Case No. 2009
CA 000838, a motion for summary judgment invoking § 12-311 as a
basis to dismiss the case is pending that will likely be decided by the
Court in late November, 2010. Specifically, Plaintiffs Opposition to
the Motion is due on October 6, 2010. Defendant's Reply brief is due
on October 27, 2010.*

Mr. Rocha worked with asbestos while performing construction work
in the District of Columbia in the 1970's. He retired from construction
and was subsequently employed in the hospitality business at the time
of his diagnosis of mesothelioma. He was also immediately disabled
upon his diagnosis and did not return to work. Under the misreading
of the statute advanced by Defendant, Georgia Pacific, Mr. Rocha
would have only one (1) year in which to bring his personal injury
claim. Mr. Rocha died of his mesothelioma. His personal injury claim
(a survival action) was brought within three (3) years from the date of
his diagnosis. Georgia Pacific argues that under § 12-311 his injury
claim is 2 years too late and his widow has no recourse. This is
precisely the type of case that merits an immediate clarification of the

statute so that there can be no misreading resulting in an outcome that stands in direct contrast to the intent of the D.C. Council when it enacted § 12-311. (emphasis supplied)

92.     The Memorandum's "Proposed Action" for D.C Council to take was the enactment, verbatim, of one of the two the proposed bills that Brown had faxed to Taglieri on June 8, 2010. Brown's proposed amendment to § 12-311 still lacked any language to indicate that the legislature intended retroactive application of the amendments.

93.     The emergency status of the legislation meant that the bill would be introduced and voted upon by D.C. Council without any committee hearings preceding its consideration and, following its enactment, would take effect immediately upon its signing by the mayor.

94.     On September 30, 2010, Mendelson filed with the Secretary of D.C. Council and sent to all Council members a Notice of Intent to Move Emergency and Temporary Legislation:

> I am requesting that the following emergency legislation be placed on the agenda for the October 5, 2010 legislative session:
>
>> "Asbestos Statute of Limitations Clarification Emergency Declaration Resolution of 2010"
>>
>> "Asbestos Statute of Limitations Clarification Emergency Act of 2010"
>>
>> "Asbestos Statute of Limitations Clarification Temporary Act of 2010"

In 1987, the Council enacted D.C. Law 6-202, the "District of Columbia Statute of Limitations Amendment Act of 1986", (D.C. Official Code § 12-311). The legislation was designed to add a new and more liberal limitations provision specifically governing actions for personal injury arising out of exposure to asbestos.

Under the older standard, DC Official Code § 12-301, the standard limitation period for a plaintiff asserting a claim of personal injury as a result of negligence or product liability in the District of Columbia is three years from the accrual of the action. Mesothelioma is a disease caused by exposure to asbestos. It is an extremely aggressive, rapidly progressing tumor that affords victims an average life span of 12 months from the date of diagnosis of the illness.

In stark contrast to that disease process, asbestosis can take many years before it manifests as a debilitating disease -- long enough that the standard 3-year statute of limitation might run before the disease becomes debilitating. D.C. Law 6-202, (D.C. Official Code § 12-311) was always designed to apply to victims of slowly progressing asbestosis not limiting all asbestos cases to one year.

This legislation will clarify any confusion that the language of § 12-311 may have promoted.

95.     Both Acts amended  § 12-311 by adding this language that closely parallels the language in Brown's original proposal: "(d) A plaintiff in an asbestos-injury action shall have the longer of the limitation period prescribed by subsection (a) of this section or the limitation period prescribed by D.C. code § 12-301 (8)." The proposed amendments to § 12-311 still lacked any language to indicate that the legislature intended retroactive application of the amendments.

96.     On information and belief, Brown played a substantial role in drafting the three pieces of legislation offered by Mendelson.

97.    On October 5, 2010, D.C. council passed without debate or amendment all three bills.  57 D.C. Reg. 9697 (October 5, 2010).

98.    The legislation required the signature of Mayor Gray in order to become law.

99.    On October 6, 2010, Brown filed his opposition to Georgia Pacific's motion for summary judgment but made no mention of the legislation D.C. council had passed just the day before to save Mrs. Rocha's case.

100.    On October 20, 2010, Mayor Gray approved the three measures and they became law.  57 D.C. Reg. 10134 (October 20, 2010).

101.    On October 27, 2010. Georgia Pacific, still unaware of the actions taken by Brown and D.C. Council to amend § 12-311, filed its reply brief to Brown's opposition.

102.    On November 12, 2010, Brown filed a surreply brief in which he announced the amendment of § 12-311 and argued, *inter alia*, that "the Act may be retroactively applied."

103.    On January 10, 2011, Judge Combs Greene granted Georgia-Pacific's summary judgment motion and dismissed Mrs. Rocha's case with prejudice.  Judge Combs Greene held that Plaintiff's action was barred by Section 12-311 and that the Act's amendments to Section 12-311 -- which would have saved Mrs. Rocha's case -- could not be given retroactive effect because "neither the Act nor the

24

Resolution contains language to indicate that the legislature intended retroactive application."

104.   On January 28, 2011, at Brown's direction, Jewell submitted an Order of Nonsuit to the Newport News Circuit Court in the Virginia Action.

105.   On January 31, 2011, the Order of Nonsuit was entered and the Virginia Action was dismissed.

106.   On April 26, 2011, Judge Combs Green entered final judgment against Mrs. Rocha in the District of Columbia Action.

107.   On May 24, 2011, Brown filed a notice of appeal of the summary judgment entered by the trial court in the District of Columbia Action.

108.   On June 9, 2011, Defendants told Mrs. Rocha that they were terminating their attorney-client relationship and intended to withdraw from further representation of her in the District of Columbia court of appeals proceeding appeal.

109.   Before they withdrew, Defendants failed to advise Mrs. Rocha that if the Virginia Action was not re-filed on or before July 29, 2011, the case would be time-barred by operation of the Virginia statute of limitations.

110.   On June 10, 2011, Defendants filed a motion in the D.C. Court of Appeals to withdraw as her counsel in the appeal, which Mrs. Rocha opposed.

111.   On June 28, 2011, the D.C. Court of Appeals granted Defendants'

motion to withdraw, leaving Mrs. Rocha without counsel.

112.  Defendants had an ethical duty to notify Mrs. Rocha that she may have a legal-malpractice claim against them.  Defendants, however, failed to do so at any time.

113.  On information and belief, Defendants arranged for the Texas-based law firm, Waters & Kraus LLP, to represent Mrs. Rocha in the appeal on a contingency fee basis.

114.  Thereafter, lawyers affiliated with Waters and Kraus entered their appearance as counsel for Mrs. Rocha in the D.C. Court of Appeals proceeding.

115.  On July 1, 2011, Jewell wrote to Brown *via* email and U.S. Mail and alerted him to the fact that, "[u]nder Virginia Law, if the Rocha's intend to re-file their Virginia action, they must re-file it in the Newport News Circuit Court within 6 months of the entry of the Order of Nonsuit.  In other words, the case must be re-filed in the Newport News Circuit Court on or before July 29, 2011, should the Rocha family choose to re-file their Virginia lawsuit. <u>If the case is not re-filed on or before this date, the case will be time barred by operation of the Virginia statute of limitations.</u>" (emphasis in the orginal)

116.  Lipman received a copy of Jewell's July 1, 2011 letter to Brown.

117.  Brown and Lipman sent Jewell's July 1, 2011 letter to Peter A. Kraus at Waters & Kraus.

118.   On July 21, 2011, Kraus sent a letter to Mrs. Rocha enclosing the July

1, 2011 Jewell letter.   Kraus advised Mrs. Rocha not to re-file the Virginia action;

he gave these reasons:

> Although I and other members of my firm are licensed to practice in Virginia, we are not willing to refile this case for you in Virginia for a number of reasons. First, we had a similar case in which the family of a gentleman named Oliver Tate sued Georgia Pacific in Virginia for mesothelioma caused by exposures related to the sanding of premixed Georgia Pacific joint compound, just as you allege in your case. The court dismissed the case on the motion of Georgia Pacific, holding that, once the joint compound was applied to the wall, it became affixed to the property, and was subject to a deadline called the statute of repose, which bars claims based on fixtures to real property. The Virginia Supreme Court affirmed the trial court's decision in the *Tate* case, and I have attached a copy of the ruling in the Tate case, as well as a similar ruling in the *Ring* case.

> Under this holding, your claim would likely be barred in Virginia. Although we could argue that a portion of your husband's exposure occurred in DC, and DC law should be applied, in my judgment, it would be highly unlikely for a Virginia judge to rule our way on such an argument. Since the case would be filed in Virginia, your husband lived, got sick, and died in Virginia, and a large portion of his exposure occurred in Virginia, in our view, a Virginia judge would almost certainly apply Virginia law, including the Virginia Statute of Repose, to your claim.

> Second, even if we could pursue it, the claim would be of limited value in Virginia, because the Virginia Wrongful Death Act does not allow for the recovery of compensation for the pain and suffering of the decedent before death. As you know better than anyone, this is a major portion of your claim. Also, the courts and juries are generally less favorable to plaintiffs in Virginia.

> Finally, there is a rule in Virginia which states that a second, voluntary nonsuit or dismissal of a lawsuit by the plaintiffs bars that claim with prejudice forever. This means that it could not be refiled

and litigated again there. Your DC appeal will not be resolved within the time period in which we would have to decide whether to serve the defendants with and move forward to litigate a second Virginia suit, if we refiled it. If we dismissed it again so as not to have to move forward with it in Virginia before the DC appeal was completed, not only would we be unable to refile it in Virginia, but we would open ourselves up to the argument that the dismissal for a second time in Virginia would operate to bar any further litigation of your case in DC or anywhere else. It is unclear how a DC court would rule on such a motion, but there is no question that pursuing a separate action in Virginia for the same conduct seeking the same relief would look bad to the DC courts and may well prejudice our chances to win the appeal and move forward with your case in DC.

For all of these reasons, we think that refiling the Virginia lawsuit would not be a good idea and we will not do so. If you disagree, you will need to find other counsel to do so, and we will likely decline to handle your DC action. If you so choose, please note that the deadline for refiling a second lawsuit in Virginia is July 29, 2011. Again, as I said, we do not recommend this.

119.   July 29, 2011 passed without the refiling of the Virginia Action and Mrs. Rocha's action died.

120.   By filing Mrs. Rocha's action in Virginia, Brown breached his express promise to Mrs. Rocha to file her action in a jurisdiction in which he was certain her claims were fully actionable and viable.

121.   Brown was negligent for bringing Mrs. Rocha's claims to Virginia because he knew or should have known that her claims were barred by Virginia's statute of repose governing actions for damages arising out of defective or unsafe condition of improvements to real property, Va. Code § 8.01-250.

28

122.    On October 24, 2012, the District of Columbia Court of Appeals affirmed Judge Combs Greene's grant of summary judgment in a *per curium* decision.

## COUNT I
(Legal Malpractice)

123.    Plaintiff refers to and incorporates herein the allegations set forth above and makes them a part hereof as though set forth at length.

124.    Defendants had a duty to use such skill, prudence, and diligence as members of the legal profession commonly possess and exercise, in providing legal services to Plaintiff.

125.    During the course of Defendants' representation of Plaintiff, the conduct of the Defendants complained of above fell below the local and national standards of care for attorneys who represent personal injury victims.

126.    The conduct of the Defendants, and each of them, in doing the acts and omissions herein alleged directly resulted in damages and harm to Plaintiff as set out above.

## COUNT II
(Breach of Fiduciary Duty)

127.    Plaintiff refers to and incorporates herein the allegations set forth above and makes them a part hereof as though set forth at length.

128.    Defendants owed Plaintiff Nieves Rocha a fiduciary duty to act at all

times in good faith and in her best interests and had a duty, among other things, to

perform the services for which they were retained with reasonable care and skill, to

act in Plaintiff's highest and best interests at all times and not damage her in any

way.

129.   Defendants breached their fiduciary duties and obligations to Plaintiff

by doing all of the acts and omissions as herein alleged.  Among other things,

Defendants breached their duty by failing to properly investigate and prosecute

Plaintiff's claims, by mishandling and mismanaging her case and by failing to

conduct the litigation in a prudent manner.

130.  Plaintiff sustained damages as a direct result of Defendants doing all of

the above-described acts and omissions constituting Defendants' breach of their

fiduciary duties owed to Plaintiff.

### COUNT III
(Breach of Contract)

131.   Plaintiff refers to and incorporates herein the allegations set forth

above and makes them a part hereof as though set forth at length.

132.    Through the conduct alleged in this Second Amended Complaint,

Defendants materially breached their express promises to Mrs. Rocha that they

would get the District of Columbia statute of limitations changed to make her

claim timely there and that they would file a second action for her in a jurisdiction

that was timely and could proceed to trial on the merits.

133.   As a direct result of Defendants' material breach of contract, Plaintiff has suffered injury and damages.

WHEREFORE Plaintiff demands judgment against Defendants, jointly and severally, in the principal amount of $10,000,000, interest, costs and such further relief as the court deems just.

*/s/ Peter T. Enslein*
Peter T. Enslein (367467)
Law Offices of Peter T. Enslein, P.C.
1738 Wisconsin Avenue, N.W.
Washington, DC 20007
(202) 329-9949
peter@ensleinlaw.com

*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by jury on all issues.

*/s/ Peter T. Enslein*
Peter T. Enslein